# TEXAS *v.* WHITE

No. 75–124.  Decided December 1, 1975

PER CURIAM.

Respondent was arrested at 1:30 p. m. by Amarillo, Tex., police officers while attempting to pass fraudulent checks at a drive-in window of the First National Bank of Amarillo. Only 10 minutes earlier, the officers had been informed by another bank that a man answering respondent's description and driving an automobile exactly matching that of respondent had tried to negotiate four checks drawn on a nonexistent account. Upon arrival at the First National Bank pursuant to a telephone call from that bank, the officers obtained from the drive-in teller other checks that respondent had attempted to pass there. The officers directed respondent to park his automobile at the curb. While parking the car, respondent was observed by a bank employee and one of the officers attempting to "stuff" something between the seats. Respondent was arrested and one officer drove him to the station house while the other drove respondent's car there. At the station house, the

officers questioned respondent for 30 to 45 minutes and, pursuant to their normal procedure, requested consent to search the automobile. Respondent refused to consent to the search. The officers then proceeded to search the automobile anyway. During the search, an officer discovered four wrinkled checks that corresponded to those respondent had attempted to pass at the first bank. The trial judge, relying on *Chambers* v. *Maroney,* 399 U. S. 42 (1970), admitted over respondent's objection the four checks seized during the search of respondent's automobile at the station house. The judge expressly found probable cause both for the arrest and for the search of the vehicle, either at the scene or at the station house. Respondent was convicted after a jury trial of knowingly attempting to pass a forged instrument. The Texas Court of Criminal Appeals, in a 3–2 decision, reversed respondent's conviction on the ground that the four wrinkled checks used in evidence were obtained without a warrant in violation of respondent's Fourth Amendment rights. 521 S. W. 2d 255 (1975). We reverse.

In *Chambers* v. *Maroney* we held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. There, as here, "[t]he probable-cause factor" that developed at the scene "still obtained at the station house." 399 U. S., at 52. The Court of Criminal Appeals erroneously excluded the evidence seized from the search at the station house in light of the trial judge's finding, undisturbed by the appellate court, that there was probable cause to search respondent's car.

The petition for certiorari and the motion of respondent to proceed *in forma pauperis* are granted, the judgment of the Court of Criminal Appeals is reversed, and

the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN concurs, dissenting.

Only by misstating the holding of *Chambers* v. *Maroney,* 399 U. S. 42 (1970), can the Court make that case appear dispositive of this one. The Court in its brief *per curiam* opinion today extends *Chambers* to a clearly distinguishable factual setting, without having afforded the opportunity for full briefing and oral argument. I respectfully dissent.

*Chambers* did not hold, as the Court suggests, that "police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant." *Ante,* at 68. *Chambers* simply held that to be the rule when it is reasonable to take the car to the station house in the first place.

In *Chambers* the Court took as its departure point this Court's holding in *Carroll* v. *United States,* 267 U. S. 132 (1925):

> "*Carroll* . . . holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." 399 U. S., at 51.

*Carroll,* however, did not dispose of *Chambers,* for in *Chambers,* as in this case, the police did not conduct an "immediate search," but rather seized the car and took it to the station house before searching it. The Court in *Chambers* went on to hold that once the car was

legitimately at the station house a prompt search could be conducted. But in recognition of the need to justify the seizure and removal of the car to the station house, the Court added:

"It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house." *Id.*, at 52 n. 10.

In this case, the arrest took place at 1:30 in the afternoon, and there is no indication that an immediate search would have been either impractical or unsafe for the arresting officers. It may be, of course, that respondent preferred to have his car brought to the station house, but if his convenience was the concern of the police they should have consulted with him. Surely a seizure cannot be justified on the sole ground that a citizen might have consented to it as a matter of convenience. Since, then, there was no apparent justification for the warrantless removal of respondent's car, it is clear that this is a different case from *Chambers.*

It might be argued that the taking of respondent's car to the police station was neither more of a seizure, nor in practical terms more of an intrusion, than would have been involved in an immediate at-the-scene search, which was clearly permissible. Such a contention may well be substantial enough to warrant full briefing and argument, but it is not so clearly meritorious as to warrant adoption in the summary fashion in which the Court proceeds. Indeed, a reading of *Chambers* itself suggests that this contention is without merit.

In *Chambers* the Court considered and rejected the argument that *Carroll* was wrong in permitting a warrantless search of an automobile—that the immobilization of a car until a search warrant is obtained is a "lesser" intrusion and should therefore be the outer bounds of what is permitted. The Court noted that "which is the 'greater' and which the 'lesser' intrusion is itself a debatable question," 399 U. S., at 51, and concluded:

> "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." *Id.*, at 52.

In the Court's view, then, the intrusion involved in initially seizing a car on the highway and holding it for the short time required to seek a warrant is so substantial as to be constitutionally indistinguishable from the intrusion involved in a search of the vehicle. But the Court did not stop with that observation. It went on to note that once a car is legitimately brought to the station house, the *additional* intrusion involved in simply immobilizing the car until a warrant can be sought is no less significant than that involved in a station house search: "[T]here is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." *Ibid.* It was because such temporary seizures were deemed no less intrusive than searches themselves that *Chambers* approved searches when temporary seizures would have been justified.

In short, the basic premise of *Chambers'* conclusion that seizures pending the seeking of a warrant are not constitutionally preferred to warrantless

searches was that temporary seizures are themselves intrusive. That same premise suggests that the seizure and removal of respondent's car in this case were quite apart from the subsequent search, an intrusion of constitutional dimension that must be independently justified.* The seizure and removal here were not for the purpose of immobilizing the car until a warrant could be secured, nor were they for the purpose of facilitating a safe and thorough search of the car. In the absence of any other justification, I would hold the seizure of petitioner's car unlawful and exclude the evidence seized in the subsequent search.

I would have denied the petition for certiorari, but now that the writ has been granted I would affirm the judgment of the Court of Criminal Appeals, or at least set the case for oral argument. In any event, it should be clear to the court below that nothing this Court does today precludes it from reaching the result it did under applicable state law. See *Oregon* v. *Hass,* 420 U. S. 714, 726 (1975) (MARSHALL, J., dissenting).

---

*One might argue that respondent's car was seized and held for a shorter period of time than would be required to ask a magistrate for a warrant, and that the intrusion here is therefore of less significance than the intrusions referred to in *Chambers.* But *Chambers* took such time elements out of the equation. While recognizing that the relative intrusiveness of an immediate search and a seizure pending the seeking of a warrant would depend on "a variety of circumstances," 399 U. S., at 51–52, the Court preferred the predictability of a general rule "equating" the intrusiveness of a search and a relatively brief seizure. Having chosen such a general rule, the Court should follow it to its logical conclusion.