WRIGHT, Presiding Judge.
This is an appeal from a judgment of condemnation and forfeiture of a motor vehicle used for transporting illegal liquor under Title 29, Section 247, Code of Alabama (1940). We affirm.
In the dark of early morning on April 1, 1976, a two-ton truck belonging to appellant, David Burnett, was stopped by police officers on a public highway in Hamilton, Marion County, Alabama. The truck was subsequently searched and found to be loaded with from 600 to 1,000 cases of beer. Marion County is a dry county. The occupants of the truck were subsequently charged with violating the prohibition law. The beer was sold to licensed beer distributors in a wet county. Condemnation proceedings were filed against the truck. After hearing testimony orally, the court declared the truck forfeited and ordered it sold according to statute. The owner of the truck appeals.
Appellant’s first issue is that the State should not prevail because of the clean hands doctrine. The argument of appellant on this issue is unsupported by any pleading or defense filed in the case. It is unsupported by any precedential case citations. The gist of the argument appears to be that there were 1,000 cases of beer in the truck at the time of its seizure. However, the evidence of the State claimed only a seizure of 624 cases. Since someone stole or disposed of 376 cases, the State should' not be permitted to condemn appellant’s truck.
We cannot accept appellant’s argument. We are unable to perceive how appellant can complain that the State should not be permitted to condemn a truck because it claims the transporting of 624 cases of illegal liquor instead of 1,000 cases. It would appear that a transporter of illegal liquor has little standing to invoke the clean hands doctrine.
Appellant contends that the evidence did not sustain condemnation because no witness ever opened, tasted or smelled any of the containers. The evidence was that there were at least 624 cases of unopened metal cans labeled with the name of various beers. The cases were carried to licensed wholesalers of beer and there sold as beer for a valuable consideration. We do not consider it necessary that anyone taste, smell or otherwise sample the contents of those cans in order to establish that they in fact contained beer. Kilpatrick v. State, 38 Ala.App. 256, 81 So.2d 926 (1955).
The remaining issue is whether the search of the truck and seizure of its contents were illegal under the Fourth Amendment to the Constitution of the United States.
The most recent cases decided by the Supreme Court of Alabama relating to Fourth Amendment requirements for lawful search of automobiles stopped upon streets and highways and taken into custody of law officers are In re Bassett v. State, 290 Ala. 259, 275 So.2d 720, cert. denied 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86, and Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1974). These decisions, and particularly that of Daniels, discussed the most recent decisions of the Supreme Court of the United States involving warrantless searches of automobiles. We perceive no benefit in our restating or discussing in • any length the *42 principles of those cases. We think it sufficient to say that we believe that the holding of the U.S. Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) is enough support of the action of the trial court in permitting introduction of evidence obtained through the search of the vehicle in the case. The decision in Chambers was recently expanded by the decision in Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).
The question to be answered in any case of a warrantless search, either of a house or an automobile, is: was the search reasonable under the circumstances? Reasonableness is dependent upon the presence of the ingredients necessary to the magic status of “probable cause.” The determination of reasonableness differs depending upon whether the place or object to be searched is a house or a motor vehicle. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); South Dakota v. Opperman,_U.S._, 96 S.Ct. 3092 at 3095, 49 L.Ed.2d 1000 (1976).
The testimony in this case relating to the stopping and seizing of the truck was as follows: Some two days prior to the seizure, an informant told one of the seizing officers that a truck loaded with illegal alcoholic beverages would be entering the area along a particular route; the truck would be of a particular color; it would come in the dark on the night of April 1; the informant had previously given information concerning drugs which had resulted in indictment; a truck of the color and general description given did appear on the proper route at the proper time; it was observed and followed by the officers; it appeared to be heavily loaded and was seen to cross over the center line of the highway; the truck was halted by the officers on the side of the highway; the occupants delayed when asked for driver’s license and identification; upon inquiry as to contents of their load and its destination, the occupants stated they were hauling feed to some unknown person, at an unknown ranch of unknown location; they stated they did not have the key to unlock the rear door of the enclosed van.
The occupants were taken from the truck and were carried in the police car to the home of a judge nearby. It does not appear from the record what sort of judge he was nor what, if any, authority he possessed. The occupants remained in the police car while the officers went into the home of the judge. After a short time the officers and the occupants of the truck returned to the truck. It does not appear whether the occupants were under arrest during this period.
When they returned to the truck, they were met by a deputy sheriff who cut the lock from the door of the truck and discovered the illegal liquors.
From the evidence we have related we find the officers acted reasonably, had probable cause for stopping the truck and subsequently searching it to determine if it contained illegal liquor.
The actions and statements of the occupants, when considered in light of the information previously received, presented probable cause for an immediate search of the truck without first obtaining a warrant. Chambers v. Maroney, supra. Under the authority of Chambers v. Maroney, supra, and Texas v. White, supra, the probable cause, making an immediate warrantless search constitutionally permissible, still applied some hour or two later when the lock was cut and a search was made. The argued inference that a warrant could have been obtained when the officers went to Judge Fowler’s house, appears to us to be immaterial even if founded in fact. If the first seizure of the truck was reasonable due to probable cause, the search thereof some two hours later was equally reasonable though there had occurred opportunity for securing a warrant. The Fourth Amendment prohibits only “unreasonable searches and seizures.” It does not require that every search be made pursuant to a warrant. The question of whether a search or seizure is constitutionally reasonable is not to be determined from fixed rules, but must be determined from the facts of each *43 case. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
The court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) said concerning seizure of an automobile carrying contraband liquor, as follows:
“The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.”
Chambers v. Maroney, supra is the most often cited of a long line of cases following the rule of Carroll.
Upon the authority of Carroll v. U. S., supra, we affirm the judgment of the trial court.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.