UNITED STATES of America

v.

Harold A. ZEPP.

Crim. No. 78–257.

United States District Court,
E. D. Pennsylvania.

Oct. 31, 1978.

Peter F. Vaira, U. S. Atty., Roberto Rivera-Soto, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Nicholas J. Nastasi, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The defendant Harold A. Zepp is charged with possession of goods stolen from an interstate shipment in violation of Section 659 of Title 18 of the United States Code. He has moved to suppress certain physical evidence on the grounds that the search and seizure which produced the evidence were unconstitutional. He also seeks to suppress the fruits of that evidence. Hearing was held on the defendant's motion, and the Court has made findings of fact about the conduct of the search and seizure. For the reasons set forth below, the defendant's motion is DENIED.

On July 28, 1978, a tractor-trailer loaded with a cargo of miscellaneous freight was stolen from the premises of the Jones Motor Freight Company in Philadelphia. The truck was recovered three days later, but most of the cargo was missing. One of the items of missing cargo was a bright yellow Gould battery, serial number KRD 653–0, the outer dimensions of which were 38″ by 30″ by 16″.

Jones Motor Freight informed the Federal Bureau of Investigation (FBI) soon after the theft of the truck that they suspected that Mr. Zepp had something to do with the crime. The Company also supplied a fairly complete list of the items stolen, a physical description of most of the items, and the serial numbers of some of the items. A detailed description of the Gould battery, including its color, size and serial number was contained in the information passed along by the Company.

Meanwhile, the FBI was developing other information about the case. On about August 2, 1978, the FBI received an anonymous phone tip that two of the employees of Jones Motor Freight had been seen with merchandise stolen from the truck. The caller did not mention the defendant by name, but the FBI began to focus its investigation on company employees.

About a week before the arrest of the defendant the FBI obtained information about the case from a confidential informant. The informant had been reliable in the past, and his information corroborated other leads in the Jones Motor Freight investigation.

The informant told the FBI that Zepp was in possession of the Gould battery. Special Agent William Fleming, who was primarily responsible for dealing with the informant, testified at hearing that he had had approximately six conversations with the informant up to the time of the arrest of the defendant, and that the informant implicated Zepp each time.

On August 10, 1978, the FBI began surveillance of the defendant. Agents Macko and Stodt soon observed Mr. Zepp driving a flat-bed truck upon which was an object about the size of the missing Gould battery. From prior briefings the agents were familiar with the physical characteristics of that battery, including its color. The object on the truck was partially covered by a black cloth, but the agents were able to see a strip of bright yellow between the cloth and the pallet upon which the battery was resting. The agents estimated the strip of yellow to have been from three to six inches

wide. As they followed the vehicle, the agents were able to see onto the bed of the truck from their car, and the strip of yellow was clearly visible to them.

Based on the knowledge obtained at the briefing, and their sighting of what they thought was the Gould battery, the agents stopped the defendant's truck, arrested him, and uncovered and seized the battery. The serial number of the seized battery matched that of the battery stolen from Jones Motor Freight on July 31.

The FBI actually had a great deal more probable cause to arrest the defendant than is indicated by the facts set forth above. The defendant argues, and the Court finds, that the FBI had reason to believe that the defendant had arranged to sell the battery at the intersection of Front and Lehigh Streets in Philadelphia sometime on the evening of August 10. The FBI also had reason to believe that the defendant planned to be present at the sale. Those expectations proved to be true; the FBI found Zepp (for a second time) on August 10th by waiting for him at Front and Lehigh. The Court also finds that the FBI had received the information about the impending sale from a reliable informant sometime on or before August 9th.

I

■ The defendant argues, rather ingeniously, that a search warrant was required

in this case because the FBI had *more* than enough probable cause and sufficient time to obtain a warrant to search him and his vehicle.[1] The Court agrees that there was probable cause both to arrest the defendant and to search his truck for the battery. That probable cause was based on information supplied by the Company, and information supplied by a previously reliable informant whose information was based on first hand knowledge.[2]

The defendant's argument finds strong support in certain language in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971): "[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances' ".

If that statement in *Coolidge* were still the law, this Court would perhaps be required to grant the defendant's motion to suppress. However, in subsequent cases the Supreme Court has modified the position taken in *Coolidge*.[3] The "exigent circumstances" exception to the warrant requirement is no longer the only such exception, if indeed it ever was.

In recent years the Supreme Court has attempted to incorporate various search and seizure doctrines into a single framework. The foundation of that framework was stated succinctly in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973):

1. The defendant does argue in the alternative that no probable cause existed, but the argument is not pressed. In any event, the Court finds it to be without merit. In fact, most of the defendant's questions at hearing were aimed at establishing that probable cause existed long before the search.

2. At first blush, it is difficult to envision how the FBI would have gone about drafting a warrant authorizing the search, for example, of the area around Front and Lehigh Streets, including any truck in which the defendant happened to arrive. On reflection, however, the difficulties do not appear at all insurmountable. As has been noted many times, the Fourth Amendment "protects people, not places." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrant describing the battery and authorizing a search of the defendant and any vehicle in which he arrived would certainly have been sufficiently particu-

larized to satisfy Fourth Amendment requirements.

In fact, Rule 41(c), F.R.Crim.P. apparently contemplates such situations: "If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist he shall issue a warrant identifying the property and naming or describing the person *or* place to be searched." (emphasis supplied) Here, the FBI knew the person to be searched, and there is no reason to read Rule 41, or the Fourth Amendment, as requiring the agents to specify the exact truck to be searched.

3. The quoted statement did not command a majority of the Court. Only Justices Stewart, Douglas, Brennan and Marshall concurred in Part II-C of the Opinion, in which the statement appeared.

"The ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant'." 413 U.S. at 439, 93 S.Ct. at 2527, quoting *Camara v. Municipal Court*, 387 U.S. 523, 528–9, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

■ The classes of cases in which a warrantless search is reasonable, and therefore constitutional, include (but are not necessarily limited to) searches incident to arrest (*Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)); "stop and frisk" (*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); search of the person incident to an arrest (*U. S. v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)); vehicle searches (*Cady v. Dombrowski, supra*); and "exigent circumstances" searches (*Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)). Warrantless seizure of fruits, instrumentalities, and evidence of crime in "plain view" is permissible if the officer was lawfully in the place from which he viewed the object seized. *Coolidge v. New Hampshire, supra*, 403 U.S. at 582, 91 S.Ct. 2022.[4]

Examination of the exceptions to the warrant requirement listed above reveals that the shared characteristic of all the searches is not "exigent circumstances" but "reasonableness".

■ Warrantless inventory searches of impounded vehicles, for example, are constitutional not because of any exigency but because "the process is aimed at securing or protecting the car and its contents." *South Dakota v. Opperman*, 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976).

■ Warrantless searches of the person incident to an arrest are constitutional because "a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson, supra*, 414 U.S. at 235, 94 S.Ct. at 477.

The defendant places principal reliance on *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Chadwick*, agents seized a foot-locker from the defendants' car, and searched the footlocker later while it was safely in custody at the Federal Building. The agents had arrested the defendant because they had probable cause to believe that the footlocker contained marijuana. The Court held that the arrest of the defendant did not eliminate his expectation of privacy in his footlocker, and that therefore a warrant to search the footlocker was required. No warrant having been obtained, the evidence seized from the footlocker was suppressed.

The Court in *Chadwick* summarized the bases for warrantless searches of automobiles. The Court made clear that while one justification for a warrantless automobile search may still be exigent circumstances,[5] another distinct and independent justification for a warrantless search is "the diminished expectation of privacy which surrounds the automobile." (433 U.S. at 12, 97 S.Ct. at 2484.):

"[T]his Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. [citations omitted]

Our treatment of automobiles has been based in part on their inherent mobility,

---

4. The Court in *Coolidge* stressed that the plain view doctrine "serves to supplement the prior justification—whether it be warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused . . . [but] plain view

*alone* is never enough to justify the warrantless seizure of evidence." 403 U.S. at 466–8, 91 S.Ct. at 2038 (emphasis in original).

5. *United States v. Chadwick, supra*, 433 U.S. at 13, n. 7, 97 S.Ct. 2476.

which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent.' " *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); [citations omitted] The answer lies in the diminished expectation of privacy which surrounds the automobile:

'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view.' *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion).

In fact, *Chadwick* was not the first case that suggested that a warrantless search might be held reasonable because of the property owner's diminished expectation of privacy in the area searched, and not because of exigent circumstances. The majority in *United States v. Robinson, supra*, upheld the reasonableness of the "intrusion" of a search of the person based on the intrusion of the arrest. (See the passage quoted *supra* at 1065.) Mr. Justice Powell, concurring, was even more specific: "The search incident to arrest is reasonable under the Fourth Amendment because the privacy interest protected by that constitutional guarantee is legitimately abated by the fact of arrest." 414 U.S. at 237–8, 94 S.Ct. at 494.

The defendant argues that *Chadwick* compels a finding that the warrantless search and seizure in this case were unreasonable. *Chadwick* does clearly indicate the proper result in this case, but it compels a finding that the search *was* reasonable. In *Chadwick*, the defendants' expectations of privacy were obvious:

"By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination." 433 U.S. at 11, 97 S.Ct. at 2483.

[6] In contrast, Defendant Zepp could have had *no* expectation that his partially-covered cargo would remain free from public view. The nature of the cargo was apparent to anyone who was thoroughly familiar with the physical characteristics of that type of Gould battery, as were these agents.[6]

The defendant may have had an expectation that members of the general public would be ignorant of the character of his cargo. That expectation is, of course, entirely different from an expectation of privacy.

## II

A finding that an exception to the warrant requirement applies in this case does not completely meet the defendant's argument that a warrant was required because the agents had sufficient time and probable cause to secure one. As Mr. Justice Marshall argued in dissent in *United States v. Robinson, supra* :

"[B]ecause an exception is invoked to justify a search without a warrant does not preclude further judicial inquiry into the

**6.** The defendant has argued that the FBI agents' testimony about the "yellow strip" was inherently incredible in that the black tarpaulin was capable of covering the entire battery, and that the defendant would naturally have secured the tarpaulin in such a way that the entire battery would have been covered. As is apparent from its findings of fact *supra*, the Court found the agents' testimony to have been truthful. It is not necessary therefore to reach the question of whether the defendant would have had an expectation of privacy in the area under the tarpaulin if the tarpaulin had covered

the battery completely. However, it would be anomalous, to say the least, if defendants who cover such evidence with cloth and place it on the back of a flatbed truck are entitled to such an expectation of privacy, while defendants who place evidence of crime in the trunk of a car are not. See, *Cady v. Dombrowski, supra*. Expectations of privacy adhere to, and the holding in *Chadwick* is likely to extend to, items of personalty carried in a car which are intended to enclose other items of personalty— e. g. briefcases, luggage, etc.

reasonableness of that search . . . '[T]he general requirement that a search warrant be obtained is not lightly to be dispensed with, and' the burden is on those seeking [an] exemption [from the requirement] to show the *need* for it." 414 U.S. at 243, 94 S.Ct. at 480, quoting *Chimel v. California*, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (emphasis supplied).

 The difficulty this Court has with defendant's argument is that the Supreme Court has considered it and rejected it in cases very similar to this one. In at least three automobile cases, in which there were vigorous dissents advancing essentially the same argument that the defendant makes here, the Court has upheld warrantless searches where the police had both ample opportunity to obtain a warrant and probable cause to search the vehicles for evidence of the crimes for which the defendants had been arrested. See *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion). The obvious basis for the holdings is that, in most automobile cases, a warrant is an unnecessary safeguard because "One has a lesser expectation of privacy in a motor vehicle . . ." *Cardwell v. Lewis, supra*, 417 U.S. at 590, 94 S.Ct. at 2469. The primary protection afforded by the Fourth Amendment is not the warrant requirement but the protection of one's privacy. *Cardwell v. Lewis, supra*, 417 U.S. at 589, 94 S.Ct. 2464, citing *Warden v. Hayden*, 387 U.S. 294, 305–6, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The conclusion is inescapable that, at least where the defendant had such diminished expectations of privacy (making

the automobile exception applicable and the search reasonable), the police are *not* required to demonstrate a specific "need" for invoking the exception.[7] The requirement that the search be reasonable is sufficient to safeguard the defendant's diminished privacy interests in his vehicle.

Finally, the Supreme Court has explicitly rejected the *approach* proposed by the defendant here:

"The Fourth Amendment does not require every search be made pursuant to a warrant. It prohibits only 'unreasonable searches and seizures'. The relevant test is not the reasonableness of the opportunity to procure a warrant but the reasonableness of the seizure under all the circumstances." *South Dakota v. Opperman*, 428 U.S. 364, 372–3, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976), quoting Mr. Justice Black in *Coolidge v. New Hampshire*, 403 U.S. at 509–10, 91 S.Ct. 2022.

 The Court holds that Mr. Zepp had diminished expectations of privacy in the cargo that he carried, and that, given the existence of probable cause to search, a warrantless search of the truck and its cargo was reasonable.

In light of the Court's holding that the search and seizure of the truck were lawful, the defendant's motions to suppress other "fruits" of the seizure are also denied.

---

7. *Coolidge v. New Hampshire, supra,* still stands as a limit on warrantless searches of automobiles. There, the defendant's car was not "travels[ling] public thoroughfares where its occupants and its contents are in plain view." *Cardwell v. Lewis, supra,* 417 U.S. at 590, 94 S.Ct. at 2469. Rather, it was parked on his property next to his home. Under the cir-

cumstances, the defendant arguably had a reasonable expectation of privacy in the automobile. Where such an expectation is present *Chambers v. Maroney, supra, Texas v. White, supra,* and *Cardwell v. Lewis, supra,* do not obviate the need for a warrant, as *Chadwick* made clear.