UNITED STATES, Appellee,

v.

Lance S. GILLIS, Corporal, U. S. Marine Corps, Appellant.

No. 36,790.
NCM 78–0729.

U. S. Court of Military Appeals.

Dec. 3, 1979.

For Appellant: *Lieutenant Lawrence W. Muschamp,* JAGC, USN (argued).

For Appellee: *Lieutenant J. G. Van Winkle,* JAGC, USNR (argued); *Commander T. C. Watson, Jr.,* JAGC, USN (on brief).

*Opinion of the Court*

COOK, Judge:

We granted review to determine whether a quantity of marijuana which was a product of a search of an automobile was properly admitted into evidence. The desk sergeant, Staff Sergeant Cromp, of a military police station at Marine Corps Air Station (Helicopter), Santa Ana, California, testified she received a telephone call from a person, at approximately 4:50 p. m., who informed her that an Orange Honda with Wisconsin license plates would be exiting the base at the main gate within the hour. The caller asserted that the automobile would be carrying a quantity of marijuana in a brown paper bag. However, she was unable to obtain the identity of the informant. She notified the watch commander and a member of the Criminal Investigation Division and was directed to " 'post the gates.' " At approximately 5:15 p. m., an Orange Honda bearing Wisconsin license plates was stopped by Lance Corporal Berry. In the meantime, Cromp had directed Lance Corporal Samuelson to the area "to conduct a consent search of the vehicle." On cross-examination, Cromp acknowledged that the anonymous caller did not give her a description of the driver of the car. She asserted that Samuelson had been directed to obtain consent as a "common courtesy," but the automobile would have been

searched even if the driver had not consented.

Lance Corporal Berry testified that he stopped the automobile, obtained the driver's operating license and military ID card. Lance Corporal Samuelson then arrived on the scene and took possession of the documents. Samuelson testified that he was directed to the area where the automobile was stopped and told to " 'conduct a full vehicle search.' " As he approached the automobile, he looked inside and observed a brown paper bag. He informed the driver, who was the appellant, of all the information which had been received from the anonymous caller and told appellant that they "were searching all vehicles of that description." Appellant became nervous and began to shake. He asked appellant for permission to search and appellant responded in a vulgar but affirmative manner. However, appellant's actions immediately thereafter were uncooperative and appellant put his keys in the ignition. Appellant was told to remove the keys but did not comply. He was told again, and the keys were removed. Appellant exited the automobile and his behavior conveyed the impression to Samuelson that they "were going to duke it out." This argument included two directives to appellant to step aside because appellant was impeding the search. At some point during the argument appellant stated, " '[G]o ahead and search the vehicle.' " However, a fight did not occur, and when Samuelson reached inside the automobile and removed the brown paper bag, appellant ran from the area. On cross-examination, the following colloquy ensued between Samuelson and defense counsel:

Q. Okay. And that's what you had in mind as you left the guard shack, to go out and conduct a vehicle search?

A. Yes, sir.

Q. After you obtained his driver's license and ID from the sentry, you approached the vehicle?

A. Yes, sir, I did.

Q. And it was still running?

A. Yes, sir.

Q. And you looked in the back seat and you saw a brown paper bag, is that correct?

A. Yes, sir.

Q. Was it like a grocery bag?

A. Yes, sir, but I can't remember the brand name that was on the bag, sir.

Q. But it did have some kind of a brand name on it?

A. It was from a supermarket.

Q. So it looked like any kind of a supermarket bag might look?

A. Yes, sir.

Q. Was the top closed or was it open?

A. It was folded a little bit.

Q. So you could not see inside the bag?

A. No, sir.

Q. Can we conclude then that you had no plain view of any of the contents of the bag?

A. No, sir, I did not.

Appellant testified on the matter and his testimony did not significantly vary from Samuelson's, except he asserted that he initially denied consent to search although he subsequently told him to " 'go ahead and search the' " car at some point during the argument.

The military judge ruled that the marijuana found in the bag was admissible. While he did not state the basis for his holding, he did state: "I don't believe that it was a search based upon probable cause." The Court of Military Review held that the appellant's car was properly stopped for investigative purposes; adding Samuelson's observation of the bag in the car with:

[T]he remarkable change in appellant's behavior following the MP's disclosure about the anonymous informant, together with the information the MP already had, . . . a man of reasonable caution [would be warranted] to believe that he would find marijuana in the sack in the back of appellant's car. Probable cause to search was thus established.

*United States v. Gillis*, 6 M.J. 570, 571–72 (N.C.M.R.1978).

■ In *United States v. Texidor-Perez,* 7 M.J. 356 (C.M.A.1979), we observed that an investigative stop may be predicated on reasonable suspicion. The Court of Military Review held that the initial detainment of appellant was a proper investigative stop. The distinction between a mere investigative stop and a search or seizure which must be predicated on probable cause is not clearly defined. *Id.* at 358. Here, however, testimony by government witnesses establishes that the purpose of the stop was to conduct a search. Thus, while a search of an automobile was involved, and an authorization is not required under some circumstances, the standard for evaluating its reasonableness must be probable cause to believe that contraband would be found in the automobile. *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

In *Texidor-Perez,* we held that information from an anonymous caller that an automobile of a particular description contained contraband and that it would approach the gate of a military installation was insufficient to establish probable cause, even when such automobile approached the military base for entry. The Court of Military Review found additional support for the search in appellant's reaction, when he was told of the purpose of his detention, and in the observation of a brown paper bag in the automobile. These factors would only be proper if the initial detention of the automobile was proper. *United States v. Robinson,* 6 M.J. 109 (C.M.A.1979). However, we have concluded that the initial stop must be predicated on probable cause and these additional factors cannot be considered as the information then available was insufficient for that purpose.

■ The Government alternatively argues that the appellant consented to the search. Accepting the evidence in the light most favorable to the Government, we are unable to find consent in the present case. While Samuelson testified that appellant responded in the affirmative to a request for "permission" to search, his testimony reflects that appellant was uncooperative and had to be ordered to step aside to enable him to search the vehicle. Indeed, Samuelson believed that appellant was contemplating physical force to restrain him from searching the interior of the car. The only reasonable conclusion from the evidence is that appellant merely submitted to Samuelson's assertion of authority. *See United States v. Mayton,* 1 M.J. 171 (C.M.A. 1975).

The decision of the United States Navy Court of Military Review is reversed. As the only evidence against the appellant was derived from the illegal search, the charge and its specification are ordered dismissed.

Chief Judge FLETCHER concurs.