**Robert GANDY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00856–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 23, 1992.

Discretionary Review Refused
Nov. 25, 1992.

Renato Santos, Jr., Houston, for appellant.

John B. Holmes, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE,[1] JJ.

## OPINION

PRICE, Justice (Assigned).

A jury found appellant guilty of aggravated robbery and assessed punishment at life confinement and a $10,000 fine. In two points of error, appellant complains about the trial court's ruling in denying him relief on his motion to suppress evidence, and the sufficiency of the evidence necessary to corroborate the testimony of the accomplice witness.

Clayvell Richard, testified that in May 1989, appellant drove him and Woodie Foster to the Fajita Junction restaurant located in Harris County. Appellant's vehicle was a blue four-door Nova with tinted windows. He backed his vehicle into an area at the rear of the restaurant. After parking, the three discussed who would go inside the restaurant.

Richard and Foster entered the restaurant through the back door while appellant remained in the car. They went into the restroom to look for customers. After leaving the restroom, they approached Rhonda Robinson, Phillip Griffin, and Shonette Martin who were on duty in the restaurant. Foster grabbed Griffin and put a gun to his head, while Richard, also armed, approached Robinson and ordered her to lay on the floor. Foster then ordered Martin to open the safe within two seconds, or he was going to start killing people. Richard testified when Martin was unable to open the safe, Foster shot Martin, then Griffin, then Robinson, and then him in the

foot.[2] Richard ran out of the restaurant with the money found on the counter. Both he and Foster got into the vehicle, and they drove away quickly. Foster threw the weapons out of the vehicle while enroute to his home. Richard said it was his idea to commit robbery, and appellant supplied the weapons from those he had previously placed in his vehicle. He stated the three men had an agreement to divide the money equally among them.

Initially, we address appellant's second point of error, contending the evidence is insufficient to corroborate the testimony of the accomplice witness, Richard. Appellant admits, however, that proof of an accused's presence at or near the scene of a crime during its commission, when coupled with other circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Brown v. State*, 672 S.W.2d 487, 489 (Tex.Crim.App.1984). However, he maintains that because his own testimony eliminates knowledge of the crime, his mere presence at the scene does not supply the necessary link that tends to connect him to the crime.

It is well settled that a conviction cannot be based solely on the testimony of an accomplice witness. Such testimony must be corroborated by other evidence tending to connect an accused with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. TEX.CODE CRIM. P.ANN. art. 38.14 (Vernon Supp.1992). An accomplice is anyone who participated in the crime for which an accused is being prosecuted. *Virts v. State*, 739 S.W.2d 25, 27 (Tex.Crim.App.1987).

The accomplice witness testimony rule prevents the State from basing a prosecution solely upon the word of a confederate of the defendant, without some other independent evidence. The test to determine whether accomplice witness testimony has been sufficiently corroborated is to

---

1. The Honorable Frank C. Price, former appellate justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

2. Griffin's wounds were fatal; Martin appeared at trial in a wheelchair, but did not testify; Robinson recovered from her wounds and testified.

eliminate from consideration the testimony of the accomplice witness and then examine the evidence from other sources to ascertain if there is inculpatory evidence that tends to connect appellant with the commission of the offense. *Jackson v. State,* 745 S.W.2d 4, 11 (Tex.Crim.App.), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988) (overruling cases stating test is whether "accomplice witness testimony is more likely than not"). All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary, and the corroborative evidence does not have to directly link the appellant to the offense or be sufficient by itself to establish guilt. *Reed,* 744 S.W.2d at 126; *Blackmon v. State,* 786 S.W.2d 467, 473 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

■■■ The nonaccomplice testimony which corroborates Richard's testimony regarding appellant's complicity in the aggravated robbery consists of the testimony of Gwendolyn Jessie and appellant's written statement. Jessie testified that she drove into the restaurant's drive-through at 9:30 p.m. She saw a dark-colored, four-door compact car backed into a dark area behind the restaurant. She then heard "some popping noises in rapid succession." A few seconds later, Jessie heard a loud clamoring sound and saw two people run out of the building. She testified that one of the men was carrying what appeared to be a cash bag. They both jumped into the back seat of the car and drove away quickly. She further testified that the vehicle did not have license plates and the driver left the scene without turning on the vehicle's headlights.

Appellant's written statement and his trial testimony reflect he was the driver of the vehicle that fled from the restaurant. He contended, however, he did not know that the men intended to rob the Fajita Junction. They only went there so Richard could visit a friend. He testified he drove away hurriedly at the suggestion of Foster and Richard and claimed he was fearful not to follow their command.

We find the nonaccomplice testimony sufficient to corroborate Richard's testimony. This testimony not only places appellant with the co-defendants at the scene of the crime during its commission, but also shows the suspicious circumstances under which he and the others left. *Brown,* 672 S.W.2d at 487. The fact appellant claimed he knew nothing of the robbery and only drove away at the insistence of the co-defendants does not affect the quality of the corroborating evidence, because the jury was free to believe or disbelieve any witness it chose. *Ables v. State,* 519 S.W.2d 464, 465 (Tex.Crim.App.1975). The evidence was clearly legally sufficient to connect appellant to the crime, and the jury found it was factually sufficient.

Appellant's second point of error is overruled.

In appellant's first point of error, he asserts the trial court erred in overruling his motion to suppress the evidence seized from his wife's residence and from his vehicle. Appellant contends that his wife's consent to search her residence was not voluntary because she was coerced into signing the consent form. He further contends that the warrantless search of his vehicle at the police station was illegal.

■■■ Searches conducted without a search warrant issued on probable cause are usually unreasonable. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). An exception is a search conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Reyes v. State,* 741 S.W.2d 414, 430 (Tex.Crim. App.1987). The prosecution bears the burden of showing by clear and convincing evidence that any such consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Reyes,* 741 S.W.2d at 430. This burden requires the prosecution to show the consent was positive and unequivocal, free of duress or coercion. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex. Crim.App.1985). The question of voluntariness of the consent is a question of fact to be determined from the totality of the cir-

cumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047; *Reyes*, 741 S.W.2d at 430. An otherwise voluntary consent is not vitiated by the fact an officer asserts that he could or would obtain a search warrant if consent is refused. *Grant v. State*, 709 S.W.2d 355, 357 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

The record reflects that during the suppression hearing, Sergeant Thomas testified he found Mrs. Gandy, who was seven months pregnant, in a neighboring apartment with three adult females and several children. Gandy identified herself as appellant's wife. She was crying and "quite shocked that the police were there." Gandy told Thomas she rented the apartment and it was in her name. She further explained that she and appellant were separated, and he only was staying with her temporarily.

Thomas explained to Gandy that the police were there to arrest her husband for murder, and they needed her consent to search the apartment. No weapons were drawn in her presence. He testified he spoke to her for approximately 10 minutes, and that she understood him. Thomas presented the consent form for her to read. He stated that "she wanted to know what it was all about and [he] explained to her that [they] needed to take certain things from her apartment and that [they] needed to do so under this consent ... and [they] couldn't do it unless [they] did it with her consent." Thomas also informed her that she had the right to refuse.

Thomas testified that he told her that if she did not sign the consent form that a search warrant would have to be issued, and it might take a couple of hours. Though he did not recall making the statement, he testified he would have posted a guard at her door if they needed to leave the premises to secure a search warrant, and she would not be able to freely go in and out of her apartment. He stated he calmed her down before she signed the consent form. He further testified that she had discussed the situation with one of her friends, and both agreed she should sign the form and cooperate with the investigation. Sergeant Smith and Sonya Bradley, a civilian, witnessed Gandy signing the consent.

Sergeant Swain conducted the search pursuant to Gandy's consent. Swain found, among other things, fourteen .38 caliber bullets in a blue ammunition box.

Gandy testified that she did not sign the consent form voluntarily. At the time of the search, she was seven months pregnant and had a three-year old child. She stated she was upset at the time because she had seen an undercover police officer at her apartment with his gun out, and he had told her to go back into her neighbor's apartment. Gandy said the officer came over to her neighbor's apartment, identified himself to her, and stated his reason for talking to her. The officer spoke to her in a room by herself. She stated that the officer told her if she did not sign the consent form that,

> I would only be hurting myself by not signing the form because me and my little girl wouldn't be able to get back in my house and if it took two hours, two days, two weeks, I would not be allowed to get back in my apartment for any reason.

Gandy testified she signed the consent form after the officer told her he would post a guard at her door and not permit her to enter her apartment. Gandy has a high school education and some college hour credits. She testified the officer read the form to her, and she knew she could refuse to sign it. Gandy understood what the words voluntary for search and seizure meant, however, she stated she was too nervous, scared, and upset at the time to understand what she was signing.

▮▮▮ It was for the trial court, as the sole factfinder at the suppression hearing, to determine whose version of the facts regarding the voluntariness of the consent to search was true and the court found that consent was voluntarily given. *Walker v. State*, 588 S.W.2d 920, 924 (Tex.Crim.App. 1979). On appeal, we must view the evidence adduced at the hearing in the light most favorable to the trial court's ruling to determine whether the denial of the motion

was an abuse of the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 707 (Tex. Crim.App.1986). Having done this, we find the trial court's ruling was based on the credibility of the witnesses and thus, pay deference to its ruling. The trial court did not abuse its discretion.

Appellant next contends that his vehicle was illegally searched because the vehicle was not properly impounded and the search was not conducted pursuant to a search warrant or acquired consent.

■ The vehicle was impounded at the time of appellant's arrest, about one week after the crime. It matched the description of the vehicle witness Jessie observed parked at the rear of the restaurant and used to flee the scene of the crime. It was the same automobile that co-defendant Richard, after voluntarily surrendering himself to the police, admitted was the getaway vehicle, owned and driven by appellant. It was the same vehicle from which appellant provided the weapons and ammunition used to commit the offense. Based on Jessie's statement, and the information provided by co-defendant Richard, the investigating police had not only a connection between the vehicle and the crime, but reason to believe evidence of the crime might still be contained in the vehicle. *See Wynne v. State*, 676 S.W.2d 650, 654 (Tex. App.—Corpus Christi, 1984, pet. ref'd). Thus, the impoundment of appellant's vehicle was proper.

After the vehicle was impounded, it was taken to a secured area where it could be processed by law enforcement for fingerprints, blood stains, and other evidence. Sergeant Todd testified that once the police department impounded the vehicle, he believed he had the authority to search the vehicle. While searching the vehicle, he recovered from the trunk a brown leather pistol case containing six live rounds of ammunition. Appellant complains this search was illegal because it was conducted without a search warrant.

■ We note that the right to impound appellant's vehicle was not a seizure incident to his arrest. The right to search an automobile on probable cause proceeds on a theory wholly different from that justifying the search incident to arrest. The right to search and the validity of the seizure are not dependent on the right to arrest. They depend on the reasonable cause the seizing officer has for believing the contents of the automobile offend against the law. *Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925). A warrantless search of a vehicle is different from that of a home or office. The distinguishing factor is the mobility of the vehicle. The same requirements for probable cause exist, but the requirements for securing a warrant are different.

■ In *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), the Supreme Court held that police officers, with probable cause to search an automobile at the scene where it was stopped, could constitutionally do so later at the station house without first obtaining a warrant. The rationale was that the probable cause factor that developed at the scene still existed at the station house. *Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975).

At the time appellant's vehicle was located, it could have been searched. Its connection to the crime was direct and positive, and a warrant was not necessary. Impounding the vehicle and taking it to the police station for processing and searching was more practical than searching it at the discovered location. Appellant's first point of error is overruled.[3]

The judgment is affirmed.

OLIVER–PARROTT, Chief Justice, concurring.

I concur with the result reached by the majority. I differ, however, from the majority insofar as the legality of the search of appellant's automobile. Initially, appel-

**3.** John Riley, a Federal Bureau of Investigations' agent, testified that tests on the bullets found in appellant's apartment, in his vehicle, in Foster's residence, and in the restaurant showed that some of the bullets from each of these places *could have come* from the same box.

lant complained that his car was impounded illegally. There was a connection between the car and the crime. Based on the information known to the police and outlined in the majority's opinion, there was even reason to believe evidence of the crime might still be contained therein. *Wynne v. State,* 676 S.W.2d 650, 654 (Tex.App.—Corpus Christi 1984, pet. ref'd). The impoundment was, therefore proper. The actual warrantless search is a completely different issue. Police who are engaged in a *caretaking* search may inventory the contents of a lawfully impounded vehicle. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The burden of proof is upon the State to show a lawful inventory search. *Benavides v. State,* 600 S.W.2d 809, 812 (Tex.Crim.App. [Panel Op.] 1980). The police in this case did not contend that the search was an inventory search. The police in this case admit they searched the car looking for evidence.

I do not agree with the majority that impoundment justifies search. In fact, the *Wynne* case relied upon by the majority clearly demonstrates what should be done. In *Wynne,* the car was impounded and secured in the garage until a search warrant was issued.

The *Carroll, Chambers,* and *White* cases cited as support for warrantless searches of vehicles all relied on the exigent circumstances exception to the necessity for a warrant. *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The vehicles in question in those cases were all being driven on the roadway prior to police stop and subject to being driven away after the stop. There was probable cause for search and exigent circumstances at the scene that justified a search at the scene. The *Chambers* and *White* decisions simply hold that if there could be a legal, warrantless search at the scene, there could be one later at the station house. There were no exigent circumstances at the scene of appellant's car to justify a warrantless search, and therefore, a warrant was necessary to search at the station house.

The search of the car, however, yielded very little. An independent witness had identified the car at the scene, and the accomplice had testified that the weapons actually supplied for the crime were disposed of that night. The bullets in the car trunk were no more or less incriminating than the bullets in the apartment. Based on the evidence in the entirety, recited more fully in the majority, even though the admission of the bullets found in the car was in error, they did not contribute to either appellant's conviction or punishment. Tex.R.App.P. 81(b)(2).

The result for appellant is the same, but the reasoning is important. The warrantless search was not justified, but the error in this case, was harmless.