**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2253
_____

UNITED STATES OF AMERICA

v.

CHARLES THOMPSON,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-12-cr-00017-001)
District Judge:  Hon. Michael M. Baylson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 22, 2013

Before:  AMBRO, SMITH, and CHAGARES, Circuit Judges.

(Filed: November 25, 2013 )
_____

OPINION
_____

CHAGARES, Circuit Judge.

Charles Thompson appeals the District Court's denial of his motion to suppress

physical evidence obtained from a search of his car after it was stopped based on a tip

from a confidential informant.  For the reasons that follow, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the facts relevant to our decision. On June 21, 2010, Officer Melissa Fox Binnacombe of the Darby Borough Police Department ("DBPD") in Delaware County, Pennsylvania, received a call from a confidential informant, T.W, on her personal cell phone. T.W. informed her that Thompson had asked him for a ride into Darby so that Thompson could sell an AK-47 rifle. T.W. provided this information to Binnacombe so that the DBPD could organize, stop the van, and arrest Thompson. T.W. said that he was going to be driving Thompson in a blue Ford Econoline van and described the precise route that he would take. He also provided Binnacombe with Thompson's name and race, noted that there would only be two people in the van, and said that the gun would be in a side panel.

Binnacombe had known T.W. for over a year, during which time he had proven to be a reliable informant. In August 2009, he provided Binnacombe with the home and work location of a fugitive wanted for a shooting in Philadelphia. In May 2010, he told her that he was going to be giving a ride to another fugitive wanted in Philadelphia. He provided the approximate time he would be leaving, the route he would be taking, and the point on that route where he would run a stop sign so that the police could pull over the car. On a third occasion, T.W. provided information on a drug dealer who ended up becoming a target of a federal investigation.

The DBPD decided to act on the tip. They set up several cars, marked and unmarked, to monitor the route that T.W. had outlined. After they were in position, Binnacombe received two more calls from T.W., who addressed Binnacombe as though

2

she was his girlfriend so as to not arouse suspicion with Thompson. In the first call, T.W. relayed that they were about to get on the road. In the second call, he provided Binnacombe with his location in real time as he drove the van.

After the second call, Binnacombe observed a blue Ford Econoline van on the route that T.W. had described. She notified other units involved, who proceeded to follow and stop it. T.W. and Thompson were removed from the van, arrested, and placed in separate police cars. The ranking officer on the scene, Lieutenant Richard Gibney, decided not to search the van for the gun at the time of the stop because the van was stopped in the middle of the street and a large crowd had begun to form. Gibney directed Detective Brian Pitts to drive the van to the DBPD station and perform the search for the gun there. Pitts drove the van to a secure police parking lot about two minutes away, and immediately searched it. Pitts found the gun in a side panel, just as T.W. described. After being advised of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), Thompson told the DBPD that he had two more guns at his home, and gave written consent to search it. In the course of that search, the police found those two weapons, ammunition, marijuana and cocaine base.

A grand jury returned an indictment charging Thompson with two counts of possession of firearms or ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Thompson moved to suppress the seized weapons as well as his post-arrest statements. Following a suppression hearing, the District Court denied Thompson's motion in a brief written opinion. The Court found the testimony of the three officers who testified (Binnacombe, Gibney, and Pitts) credible, and that the search was

3

permissible on two grounds: under the Fourth Amendment's automobile exception, and as a search incident to arrest. Thompson then entered a conditional guilty plea pursuant to a written plea agreement in which he specifically preserved his right to appeal the denial of his motion. After being sentenced to an aggregate term of 84 months of imprisonment, Thompson timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. In the suppression context, we "review the factual findings of the District Court for clear error, and exercise plenary review over the application of law to those facts." United States v. Pierce, 622 F.3d 209, 210 (3d Cir. 2010).

## III.

On appeal, Thompson argues that the tip from T.W. was insufficient to establish probable cause, and that after the police moved the van back to the police station, they were required to get a search warrant before searching it. Both contentions fail.

## A.

Probable cause is based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). "To find probable cause to search, there needs to be a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quotation marks and citation omitted). When relying on a confidential informant to establish probable cause, the

4

informant's veracity, reliability, and basis of knowledge are relevant considerations in the totality of the circumstances analysis. Gates, 462 U.S. at 233.

The Supreme Court's decision in Draper v. United States, 358 U.S. 307 (1959), is instructive. There, an informant who had been reliable on several previous occasions reported that Draper would arrive by train in Denver from Chicago on one of two days and would be carrying heroin. The informant also relayed a detailed physical description, including a prediction that Draper would be wearing a light-colored raincoat, brown slacks, and black shoes, and would be walking quickly. Police corroborated this information when they saw a man matching Draper's description come off a train in Denver on one of the specified dates, wearing those clothes, and walking quickly. The Supreme Court held that the informant's information, as corroborated by the police, was sufficient to establish probable cause to seize and search him. Draper, 358 U.S. at 309-10, 313.

This case is substantially similar. The DBPD were acting on a tip from an informant who had proved uniformly reliable on several prior occasions. The informant described the vehicle he would be driving, the number of passengers in the vehicle and their race, and the route he would take. He provided updates to the DBPD on his progress in real time. The DBPD corroborated this information through their own surveillance. We hold that their decision to stop the vehicle was supported by probable cause.

B.

Thompson argues that even if the DBPD had probable cause to make the stop, they were required to obtain a warrant to search the van once they removed it from the street to their secure garage. The Government counters that the search of the car was a valid search under the automobile exception to the Fourth Amendment because the DBPD had probable cause to believe that the vehicle contained an illegal weapon.[1] The Government is correct.

The automobile exception permits police to search and seize a vehicle so long as they have probable cause to believe that the vehicle contains contraband or evidence of a crime. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). Since Chambers v. Maroney, 399 U.S. 42, 52 (1970), the Supreme Court has repeatedly held that the automobile exception does not evaporate once the vehicle has been taken away from the place of the initial stop to the police station. "[P]olice officers with probable cause to search an automobile at the scene where it was stopped [can] constitutionally do so later at the station house without first obtaining a warrant . . . . [T]he probable-cause factor that developed at the scene still obtain[s] at the station house." Texas v. White, 423 U.S. 67, 68 (1975) (per curium) (citation to Chambers, 399 U.S. at 52 omitted); see also California v. Acevedo, 500 U.S. 565, 570 (1991) ("Following Chambers, if the police have probable

---

[1] The District Court also found that the search was a valid search incident to arrest under Arizona v. Gant, 556 U.S. 332 (2009). The Government argues that because of the strength of its automobile exception argument, we need not reach this ground. Gov't Br. 21, n.4. We agree, and offer no opinion as to whether the search was a permissible search incident to arrest.

cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle.").

For the same reasons the DBPD had probable cause to stop the vehicle, they had probable cause to search it. T.W.'s tip validly led the police to believe that there was a "fair probability that contraband or evidence of a crime" was to be found in the van's side panel. Burton, 288 F.3d at 103 (quotation marks omitted). Lieutenant Gibney made the decision that rather than search the van in the middle of the street while a crowd grew, it was more prudent to conduct the search at the police station. The automobile exception permitted the police the same latitude to conduct the search without a warrant back at the station as it did at the place of the stop.

IV.

For the forgoing reasons, we will affirm the order of the District Court denying Thompson's motion to suppress.