**Marcia Lynette GRANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–81–299–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

April 24, 1986.

Mike DeGuerin, Houston, for appellant.

John B. Holmes, Jr., William Delmore, III, Houston, for appellee.

Before CANNON, PAUL PRESSLER and SEARS, JJ.

PAUL PRESSLER, Justice.

This is an appeal from a conviction for possession of a controlled substance with intent to deliver. We affirm.

J.M. Castillo, an officer of the Houston Police Department, received information from a narcotics officer in Los Angeles, California concerning two suspects traveling by plane from Los Angeles (a drug source city) to Houston. The Los Angeles narcotics officer, who had given reliable information in the past, accurately described the appellant, her co-defendant, and a suitcase which had been checked with the airline. He told Castillo his suspicions were aroused by the travelers' extreme nervousness, their cash payments for one-way tickets, and their small amount of luggage.

Castillo and three other officers went to the Houston Intercontinental Airport and observed the suspects. Appellant and her co-defendant were among the last passengers to leave the plane. They walked slowly and scanned their surroundings as if to see if anyone was watching them. While continuing to survey her surroundings, appellant retrieved the described suitcase. Appellant and co-defendant then met a third person and began to walk down the airline concourse.

Castillo walked alongside the co-defendant, identified himself as a police officer, and asked if he would mind talking. The co-defendant put down the suitcase, stepped away from it, and told Castillo he did not mind speaking with him. He stated that the suitcase was appellant's and denied traveling with her. After further inquiry, he admitted that appellant had his airline ticket.

At the same time, Officer Anderson approached appellant, displayed her police identification, and asked if appellant would mind talking with her. She said no. Obvious inconsistencies arose in their discussion. Appellant ultimately consented to a search of the suitcase where the officers found two packages of cocaine. Appellant and her co-defendant were then arrested. A subsequent search of appellant discover-

ed another package of cocaine on her person. In a written statement, she admitted she consented to the search of the suitcase and had purchased approximately one kilo of cocaine in Miami for $50,000.

Appellant was charged with possession with intent to deliver cocaine. After her motion to suppress was overruled, she entered a plea of guilty and was found guilty by the trial court. Her punishment was assessed at ten years confinement in the Texas Department of Corrections.

Appellant's conviction was affirmed by this court, but the merits of her motion to suppress were not addressed. Appellant then filed an application for writ of habeas corpus contending her plea of guilty was involuntary and conditioned on the availability of appellate review of the motion to suppress. The Court of Criminal Appeals affirmed the denial of habeas corpus relief but held that appellant was entitled to pursue an out-of-time appeal on the motion to suppress.

In three grounds of error, appellant argues that the evidence should have been suppressed because: (1) the initial stop was not predicated on constitutionally sufficient information, and (2) the consent to search was not given voluntarily and, therefore, did not purge the primary illegality of the seizure. An initial stop such as this can be characterized either as non-coercive communication between police and citizens, a brief *Terry*-type seizure, or a full-scale arrest. *See United States v. Berry*, 670 F.2d 583 (5th Cir.1982). Here the initial stop was nothing more than a non-coercive communication between a police officer and a citizen.

Officer Anderson approached appellant, displayed her police identification, and asked if she would mind speaking with her. Appellant indicated that she did not mind talking. At this point, appellant was free to leave but chose to stay and converse with the officer.

Anderson asked to see appellant's plane ticket, which had been issued in the name "S. Johnson." When appellant could not

produce any form of identification, Anderson asked her what the initial "S" meant. In response, appellant merely shook her head. Several seconds later she stated that she didn't know what the "S" stood for. Later when Castillo engaged in a conversation with appellant, she admitted that her name was Marcia Grant.

Anderson also asked appellant about the suitcase she had claimed at baggage pick-up. Appellant contended that the suitcase was not hers. After further questioning, appellant stated that her clothes were in the suitcase but continued to insist that the suitcase was not hers. She claimed that somebody had given it to her to bring to Houston. Anderson testified that during the entire conversation appellant spoke in a low tone of voice, mumbled answers, refrained from eye-contact, and was very evasive.

■ Appellant's argument is based upon the contention that the "seizure" occurred the moment Anderson approached her, and, therefore, at that time there had to be substantive and articuable facts on which it then occurred. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 899 (1968). This is not correct. All contacts between the police and citizens are not seizures subject to the rigorous demands of the Fourth Amendment. *See Terry* supra. A seizure only occurs when "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *See United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Here the officers, dressed in plain clothes, testified that appellant was not commanded to stop, physically restrained, or shown a weapon. Since appellant could have ended the conversation at any time and proceeded on her way, no seizure occurred. *See Mendenhall* supra at 555, 100 S.Ct. at 1877.

Ultimately a *Terry*-type seizure did occur. During the initial stop, the officers uncovered inconsistencies in the suspects' stories which provided the articuable facts and reasonable suspicion necessary for continued investigation. *See United States v. Elmore,* 595 F.2d 1036 (5th Cir.1979).

■ Appellant argues that the "drug courier profile" characteristics in this case fall short of the articuable facts necessary to justify a *Terry*-type seizure. However, detention was not entirely based on the initial "profile." It rested on: (1) the display of nervous behavior; (2) the use of assumed names; (3) the disclaimer of the suitcase; (4) the co-defendant's denial of traveling with appellant; and (5) the general evasiveness of the answers.

The difference between *Perchitti v. State,* 659 S.W.2d 75 (Tex.App.—Houston [14th Dist.] 1983, no pet.) and the present case is that Perchitti's initial stop failed to expose any facts which gave rise to a reasonable suspicion on the part of the officers.

Since here there was a non-coercive police encounter in a public place and then a permissible *Terry*-type seizure, appellant's consent, if voluntary, would have been effective to legalize the search of the suitcase.

The question then becomes whether appellant's consent was voluntary. When Castillo asked if she would consent to a search of her luggage, she stated, "You may, if you have a search warrant." Castillo explained that he did not have a search warrant but that he would have one drawn up, and it would take four to six hours. Castillo then asked again if she would consent to a search of her luggage. She stated, "You can go ahead and look" and "I don't have anything to hide." Castillo opened the suitcase and found a purse. After opening the purse, he found two packets of cocaine. Appellant and the co-defendant were then arrested.

■ Appellant asserts that her consent was not voluntary because it was given only after she was told that a search warrant could be obtained and it would take four to six hours. An otherwise voluntary consent is not vitiated by the fact that an officer asserts that he could or would obtain a search warrant if consent is refused.

See *Stephenson v. State,* 494 S.W.2d 900 (Tex.Crim.App.1973); *Beaupre v. State,* 526 S.W.2d 811 (Tex.Crim.App.1975); *Resendez v. State,* 523 S.W.2d 700 (Tex.Crim. App.1975). The fact that Castillo said he would get a warrant is only one factor to consider in determining the voluntariness of appellant's consent.

Appellant asserts that she acquiesced because of the display of legal authority and this kept her consent from being voluntary. However, it is obvious that appellant was aware of the warrant requirements for searches and, therefore, was not ignorant of her legal rights. Furthermore, the officers told her specifically that she did not have to consent to a search.

Appellant also contends that her consent was involuntary because she was not told that she did not have to remain at the airport while the search warrant was being obtained. Both officers testified that appellant was never told that she had to stay. Appellant further argues that the officers incorrectly stated that they could detain the suitcase. The testimony showed that the bag was going to be detained only long enough for inspection by a drug-sniffing dog. This procedure was approved in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). As long as the officers had a reasonable belief that the suitcase contained narcotics, it was proper for them to detain it briefly. Here appellant's suspicious behavior gave the officers the basis for that reasonable belief.

The totality of the circumstances shows that appellant consented to the search freely and voluntarily. Moreover, appellant admitted in a written statement that she gave her consent to search the suitcase.

The right of the majority to live in a society free from drugs and those who profit from the misery and death they bring to its users must be recognized. This can be accomplished only through effective crime prevention and detection. Here the officers investigated possible criminal behavior even when initially there was no probable cause to arrest. They then developed the necessary probable cause. In doing so, the officers acted in a reasonable and lawful manner. The appellant's grounds of error are overruled.

The judgment of the trial court is affirmed.