**Albert Dmitri JENNINGS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–90–00359–CR.**

Court of Appeals of Texas,
Houston (14 Dist.).

Dec. 10, 1992.

John F. Carrigan, Houston, for appellant.

Carmen Falls Hunter, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION ON REMAND

PAUL PRESSLER, Justice.

Appellant was convicted of possession of cocaine with intent to deliver and sentenced to twenty years confinement plus a $20,000 fine. This court affirmed. *Jennings v. State*, No. B14-90-00359-CR (Tex.App.—Houston [14th Dist.], delivered July 3,

1991). After granting appellant's petition for discretionary review, the Court of Criminal Appeals reversed and remanded to this court for further proceedings. *Jennings v. State,* No. 1226–91 (Tex.Crim.App. November 6, 1992). The judgment of the trial court is again affirmed.

Appellant was arrested at Houston's Hobby Airport after a drug dog alerted officers to his tote bag. He filed a motion to suppress evidence which was "carried along with the trial." After appellant waived his right to a jury trial and entered a plea of not guilty, the trial court overruled his motion to suppress and found him guilty. Appellant raises three points of error challenging the search and seizure of his tote bag as violative of the Fourth Amendment to the United States Constitution, and Article I, Section 9 of the Texas Constitution.

In his first point of error, appellant claims the trial court erred in overruling his motion to suppress the cocaine seized from his bag because it was the fruit of an illegal stop and detention. On September 19, 1989, Officer David Jones was one of several narcotics officers working at Hobby Airport. He testified that he noticed appellant exit a men's bathroom appearing very nervous, concerned with his surroundings and overly possessive of his tote bag. Officer Jones continued to watch appellant, who was scanning the area in a very rapid manner, holding his bag in a possessive manner and sitting away from everyone else in the airport. Officer Harmon, who was working with Officer Jones, testified that she observed appellant's being very possessive of his bag and appearing very nervous. She testified that appellant's behavior was something a "normal traveler doesn't do."

Officer Jones then testified that he approached appellant, identified himself as a Houston Police Officer and asked appellant if he could speak with him. Appellant agreed. Officer Jones learned appellant had flown to and from Los Angeles that day under the name of "Jones." The tickets were bought with cash, and were two one-way tickets. Appellant told Officer

Jones that he had gone to Los Angeles to look for a job. Jones testified that appellant spent only three and one-half hours there. After obtaining this information, Officer Jones told appellant he was a narcotics officer and asked if he could look in appellant's tote bag. Appellant stated that he "would rather [Jones] did not look" in the bag. Officer Jones testified that he told appellant that "that was perfectly all right, that he was not obligated in any way to allow [him] to look in his bag but that at that time [he] had the right to detain [the] bag." Officer Jones further testified that he informed appellant that "he was not under arrest and was not obligated to stay, that he was free to leave at any time he so chose." At that time, the other narcotics officers approached Officer Jones and appellant. Officer Jones then told appellant about the drug-sniffing dog which they use in their investigations.

Appellant argues that he was seized when the officers first approached him and that his detention was illegal since it was not based on articulable and reasonable suspicion. This court in *Grant v. State,* 709 S.W.2d 355 (Tex.App.–Houston [14th Dist.] 1986, no pet.), was presented with a similar situation. In *Grant,* the officer approached appellant, displayed her police identification, and asked if appellant would mind talking with her. Appellant agreed. *Id.* at 356. This court noted that an initial stop such as this can be characterized as non-coercive communication between police and citizens, a brief *Terry*-type seizure, or a full-scale arrest. This court held that under the circumstances of that case, the initial stop was nothing more than a non-coercive communication between a police officer and a citizen.

Appellant contends that the "seizure" occurred the moment Officer Jones approached him, and therefore, at that time, there had to be substantive and articulable facts on which to detain him. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is not correct. All contacts between the police and citizens are not seizures subject to the rigorous demands of the Fourth Amendment. *See*

*Terry* Id. A seizure occurs only when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Here, Officer Jones was dressed in plain clothes, testified that appellant was not commanded to stop, physically restrained, or shown a weapon. Also, appellant agreed to talk with Officer Jones and was free to end the conversation at any time. Moreover, he was free "to leave at anytime he so chose." Appellant was not detained at this point.

Once an officer requests appellant's permission to search his luggage, as here, the initial approach becomes an investigative encounter implicating appellant's Fourth Amendment rights. *Holladay v. State*, 805 S.W.2d 464, 472 (Tex.Crim.App. 1991). In order for this seizure to be justified, the police officer must have had reasonable suspicion to believe appellant had committed or was about to commit a crime. *Id.* The proper inquiry is whether there is probative force sufficient to create a reasonable suspicion of wrongdoing by appellant considering all of the factors known to the police at the time. *Id.* at 473. At the time appellant was detained Officer Jones knew the following facts:

1. On the same day, appellant flew to and from Los Angeles, a known drug source city;
2. Appellant flew under an alias;
3. Appellant appeared very nervous;
4. Appellant was continuously checking his surroundings;
5. Appellant was carrying a tote bag that "did not fit his attire or his demeanor;"
6. Appellant paid cash for two one-way tickets; and
7. Appellant claimed he was looking for a job in Los Angeles, although he only spent three and one-half hours there.

Officer Jones testified that he had been a police officer for nine years and that he had been assigned to the narcotics division at Hobby Airport for a year and a half. Officer Jones also testified that his past experience working at the airport and watching travelers aided him in identifying certain persons who were possibly carrying drugs.

Considering the cumulative effect of all of these factors, there was sufficient evidence to support a finding of reasonable suspicion. There was no constitutional violation in the stop and detention of appellant. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in overruling his motion to suppress the cocaine because his bag was illegally detained and seized. Where the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics, the government may pursue further investigation by briefly seizing the luggage. *U.S. v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). The police here possessed specific and articulable facts creating a reasonable belief. Appellant's bag was detained for a minimum amount of time to allow the narcotics dog to sniff the bag which was located in a public place. Appellant's second point of error is overruled.

Appellant's third point of error contends that the trial court erred in overruling his motion to suppress because his consent to search his bag was given involuntarily. The record reveals that after the police dog alerted to appellant's bag he was placed under arrest and given his *Miranda* warnings. He was then asked if he would give the officers permission to search his bag. The officer told appellant he could give his consent or the officer could get a search warrant. There was no evidence of threats or coercion or a use of guns by the police. After first refusing, appellant decided to allow the police to search his bag because, "[they] knew it was in there, anyway." An otherwise voluntary consent is not vitiated by the fact that an officer states that he could or would obtain a search warrant if consent was refused. *Grant*, 709 S.W.2d at 357. The fact that

the officer said he would get a warrant is only one factor to consider in determining the voluntariness of appellant's consent. *Id.* at 358. The record supports the trial court's finding that appellant's consent was given voluntarily. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.