**Lafayette Russell WYNNE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–84–181–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 23, 1984.

Wolfram Law Firm and Walter Wolfram, Amarillo, Shelton & Jones and Travis D. Shelton and Dales Jones, Lubbock, for appellant.

Danny E. Hill, Dist. Atty., and Dan McBride, Asst. Dist. Atty., Amarillo, for appellee.

Before FENDER, C.J., and ASHWORTH and JOE SPURLOCK, II, JJ.

## OPINION

ASHWORTH, Justice.

A jury found appellant guilty of murder and sentenced him to 50 years confinement and assessed a fine of $10,000.00.

Judgment reversed and cause remanded for new trial.

Appellant's first ground of error contends the trial court failed to properly apply the law to the facts in the instructions to the jury. Specifically, the complaint is that the evidence raised the issue of voluntary manslaughter by reason of sudden passion from adequate cause, but the court's charge did not require the State to disprove "sudden passion" before authorizing conviction of murder. We will briefly outline some of the evidence pertinent to the first ground of error.

Appellant retired as a captain of detectives with the Amarillo Police Department after twenty years of service. Prior to his retirement he had started a security business which employed certain family members, including his wife of 36 years. After retirement, the business was sold, but his wife continued to work in the office. On two occasions during her lunch period, appellant had seen his wife in her car apparently being followed by a man in a red pickup truck. The driver of the truck was Erle Winston Mathis, a regular coffee drinker at a cafe where appellant's wife had worked as a waitress about twenty years earlier.

His suspicions aroused, appellant determined to ascertain the activities of his wife. He advised his family that he was going on a trip to Houston, but rented a car and

spent the night in a motel in Amarillo. The next day he waited until his wife left her office at noon. Appellant followed his wife to a parking lot in a medical center where she parked next to the red pickup. Appellant's wife got out of her car, and got in the pickup. Mathis, the driver of the pickup, kissed her and they drove off together.

Appellant then followed the pickup to a rather isolated area outside of town. The pickup stopped at a locked gate to a pasture; Mathis unlocked and opened the gate, appellant's wife drove the pickup through the gate, Mathis then shut and locked the gate and drove the pickup to a place where it could not be seen from the road.

Appellant drove down the road a short distance, but came back, parked his car, crawled through the pasture fence and approached the pickup. He observed his wife and Mathis, both nude, engaging in sexual intercourse in the cab of the pickup. Appellant returned to his car, got a .38 caliber pistol out of the glove compartment and checked to see if it was loaded. Appellant then drove to the medical center where his wife's car was parked, and then to the vicinity of his wife's office. After sitting in his parked car for a while, he started driving toward the office and saw his wife followed by the pickup. Appellant made a U turn and started trying to catch them. The pickup stopped in a lane of traffic; appellant stopped alongside the pickup, got out of his car and approached the pickup, the .38 pistol in hand. Mathis screamed something to the effect that a mistake had been made. Appellant responded "You did make a mistake, you sorry son-of-a-bitch", and then started pulling the trigger of the .38 pistol. An autopsy revealed that Mathis died as a result of five gunshot wounds.

The court's charge to the jury stated:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of October, 1982, in Potter County, Texas, the defendant LA-FAYETTE RUSSELL WYNNE, did then and there knowingly or intentionally cause the death of ERLE WINSTON MATHIS, an individual, hereafter styled the complainant, by shooting the complainant with a firearm, then you will find the defendant guilty of murder, as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder, and consider whether he is guilty of the lesser offense of voluntary manslaughter.

The charge continues to state an instruction on voluntary manslaughter, definitions of "sudden passion" and "adequate cause".

■ The charge was vigorously objected to by appellant's attorney because it did not require the State to disprove that appellant was acting under the influence of sudden passion arising from adequate cause. If a defendant is charged with murder and the evidence raises the issue of action under the influence of sudden passion arising from an adequate cause, then the State must prove the absence of such influence beyond a reasonable doubt to establish murder. *Braudrick v. State*, 572 S.W.2d 709 (Tex.Crim.App.1978).

The State contends in its brief that the evidence does not raise the issue of voluntary manslaughter. We note that no objection was made by the State to the court's charge, and apparently this contention is being made for the first time on appeal. The trial court found, and we agree, that the issue of sudden passion was raised by the evidence in the instant case. This is evident from the fact that the trial court provided for a possible finding of voluntary manslaughter in the court's charge, although not incorporated into the murder charge as it should have been.

In support of his contention under his first ground of error, appellant cites two Court of Criminal Appeals cases, *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Crim. App., 1983) and *Jenkins v. State* (Tex.Crim. App., February 16, 1983) (not yet reported). Appellant also cites *Gibson v. State*, No. 62,720 (Tex.Crim.App., September 14, 1983) by the Court of Criminal Appeals.

These three cases are directly in point and would be dispositive of appellant's first ground of error in his favor if we were permitted to use them as authority. However, we are aware of the fact that the opinions in *Cobarrubio* and *Jenkins* have not been published. The original opinion in *Gibson* not only addressed the precise question before us, but also set out a preferred manner in which to apply the law to the facts when sudden passion is injected into a murder case. When Gibson was published in the advance sheet at 659 S.W.2d 34, that portion of the original opinion discussing application of law to facts and the preferred manner of submission was omitted. *Gibson* is not published in the bound volume of 659 S.W.2d, the publisher stating the advance sheet opinion was withdrawn from the bound volume and will be republished.

Regardless of the appellate status of *Cobarrubio*, *Jenkins*, and *Gibson*, the law remains as set forth in *Braudrick, supra.* In the instant case, appellant in effect admitted from the witness stand that he knowingly or intentionally caused the death of Mathis by shooting him with a firearm. The court's charge, without incorporating the issue of sudden passion, amounted to an instruction to the jury to find appellant guilty of murder.

■ The issue of action due to sudden passion has been a matter of public concern in the recent past. Criticism generally has focused on who properly has the burden of proof. Is it the burden of the defendant to prove, or the burden of the State to disprove? We hold the present law in this State places the burden on the State to disprove if the evidence raises the issue. *Braudrick, supra.* In any event, in the instant case the issue was raised and should have been incorporated in the court's charge on murder, regardless of who properly had the burden. Appellant's first ground of error is sustained.

Appellant's second and third grounds of error allege error in admitting into evidence certain items found in appellant's automobile because it was illegally impounded and a search warrant was not based on probable cause.

Appellant owned a 1982 Cadillac automobile which he ordinarily drove. He left the Cadillac at the automobile rental lot when he rented a car to use in following his wife. After the shooting, he returned the rent car and drove away in the Cadillac. Police officers in the area were alerted by radio to be on the lookout for the Cadillac. On a hunch, a Department of Public Safety trooper observed the Cadillac parked at the Lubbock Airport. The trooper could not find appellant in the airport, and then had the car towed to the impound garage of the Lubbock County Sheriff. The car was roped off inside the garage until a search warrant was issued the next day.

Appellant cites *Benavides v. State*, 600 S.W.2d 809 (Tex.Crim.App.1980), in support of his position that the impoundment was unlawful. In *Benavides*, the police found the appellant and his wife on the garage floor of a residence. Both had been shot; the wife was dead and appellant had a stomach wound. Appellant's car was locked and legally parked about two blocks from the place of the shooting. The automobile was impounded and searched without benefit of a search warrant before being towed away. A suicide note found in the car was admitted into evidence to support the State's theory of murder and attempted suicide. It was held that impoundment was unlawful and therefore the inventory search was unlawful, and appellant's murder conviction was reversed.

■ *Benavides* presents a comprehensive discussion of the factors which must be shown in order to justify an impoundment of an automobile. We will not repeat such discussion. Each case must be determined on the existent facts. *Benavides* holds there must be some reasonable connection between the vehicle and the arrest; we hold a logical extension of the rule requires a reasonable connection between

the vehicle and the offense which has apparently been committed.

■ In the instant case, a pickup truck is stopped in a lane of traffic on a downtown city street; a car pulls alongside, the driver gets out and shoots the pickup driver five times. The car is then driven away, returned to a car rental lot, and the driver then drives off in a 1982 Cadillac. Later that same day, the Cadillac is discovered parked at an airport in a city some two hours drive away. We hold there was a reasonable connection between the shooting and the Cadillac justifying its impoundment. The fact that the Cadillac was substituted for the rent car shortly after the shooting gives reason to believe the Cadillac might contain evidence which would be material to the offense committed. Under the circumstances of this case, the impoundment of the Cadillac was lawful. Appellant's second ground of error is overruled.

Appellant's third ground of error contends the search warrant for the Cadillac was not issued upon a sufficient finding of probable cause. TEX.CODE CRIM.PROC. ANN. art. 18.01(b) (Vernon Supp.1984) provides a magistrate must have sufficient facts presented to satisfy him that probable cause exists for the issuance of a search warrant; an affidavit setting forth substantial facts establishing probable cause shall be filed. The warrant in question states "and whereas I find that the verified facts stated by Affiant in said Affidavit show that the Affiant has probable cause for the belief he expressed therein and established the existance [sic] of proper grounds for the issuance of this Warrant."

■ Appellant argues that the magistrate delegated his responsibility to find probable cause to the affiant because of the wording of the warrant "Affiant has probable cause." Such argument ignores the balance of the sentence which states "and established the existance [sic] of proper grounds for the issuance of this Warrant." The plain meaning of the statement is that the magistrate found that the affi-davit constituted proper grounds for issuance of the warrant. We note there was a comprehensive affidavit, four legal size pages typed single space, filed with the magistrate. We hold that when the magistrate found that proper grounds existed for the issuance of the warrant, in effect he found that probable cause existed for its issuance. Appellant's third ground of error is overruled.

Appellant's fourth ground of error alleges the trial court erred in permitting two expert witnesses on the issue of insanity to testify over appellant's objection that their reports had not been timely filed or furnished to appellant.

Appellant's fourth ground of error involves application of TEX.CODE CRIM. PROC.ANN. art 46.03 (Vernon 1979). The pertinent portions of such article, taken out of context are:

Sec. 2. (a) A defendant planning to offer evidence of the insanity defense shall file a notice of his intention to offer such evidence with the court and the prosecuting attorney....

\* \* \* \* \* \*

Sec. 3. (a) If notice of intention to raise the insanity defense is filed under Section 2 of this article, the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health and mental retardation to examine the defendant with regard to the insanity defense and to testify thereto at any trial or hearing on the issue.

(b) The court may order any defendant to submit to examination for the purposes described in this article....

(c) The court shall advise any expert appointed pursuant to this section of the facts and circumstances of the offense with which the defendant is charged and the elements of the insanity defense.

(d) A written report of the examination shall be submitted to the court within 30 days of the order of examination, and the court shall furnish copies of the

report to the defense counsel and the prosecuting attorney....

Appellant filed a notice in this case that he planned to offer evidence on his defense of insanity at the time of the offense. The State then requested the appointment of mental health experts to examine appellant. On February 15, 1983, the court appointed Dr. John Nottingham, a psychiatrist, and Dr. Jerome Brown, a clinical psychologist, both of Houston, to examine appellant.

On February 16, 1983, the two experts jointly examined appellant. Dr. Brown prepared a report of the examination, mailed it to the court on March 17, 1983, and the report was received on March 19, 1983. No report was received from Dr. Nottingham.

On March 29th, the eighth day of trial, the State offered Dr. Brown and Dr. Nottingham as rebuttal witnesses after appellant had rested. Appellant had not been furnished a copy of Dr. Brown's report prior to the time he was called as a witness. Appellant vigorously objected to the two doctors being permitted to testify. The following appears in the record:

THE COURT: All right, sir. Mr. Wynne—I mean, I'm sorry.

Mr. Shelton, the—it does appear from the record that the report, in fact, was not filed within the 30-day period. I'm going to offer you an opportunity to take Dr. Brown on voir dire outside the presence of the Jury if you would like to afford yourself of that.

MR. SHELTON: All right, sir. I'm ready to do that any time the Court's ready.

THE COURT: All right, sir. Then do you understand that in all likelihood, I'm going to go ahead and allow him to testify, and it's obvious that you didn't get the report until now?

MR. SHELTON: Yes, sir.

THE COURT: And I'm going to try to allow you as much discovery as I can. If you'd rather take him and talk to him in private for the next hour, I'll let you do that. I would let you voir dire him, or I'll let you depose him. I'll let you do whatever you want to with him, just so that you won't have to go into this less informed than I wish you were.

MR. SHELTON: Well, I appreciate the Court's offer to do that. And we would like to, of course, talk to the doctor for a little bit.

THE COURT: Sure. If you want to do it outside the Court's presence, that's fine. If you want to take the Court Reporter and go somewhere and talk to him, that's fine.

MR. SHELTON: We'd just like to find out why he didn't obey the Court's order. I think under the State's—I mean, under Defendant's Exhibit Number 10, the Court ordered that they render an opinion.

THE COURT: There's no time limit. There's no time period. He dated his letter 14, which was within the 30-day period. He didn't post mark it until the 17th, if you want to look at the post mark.

■ If the defendant files a notice of intent to offer insanity evidence, then it is discretionary with the trial judge whether to appoint disinterested experts. *De La Garza v. State*, 650 S.W.2d 870 (Tex.App.—San Antonio 1983, pet. ref'd). This is so because of the permissive words in art. 46.03, sec. 3(a) stating the court *may* appoint experts. The decision of the trial judge on appointment of experts then will not be disturbed in the absence of an abuse of that discretion. The article then provides for another discretionary act on the part of the trial judge—under sec. 3(b) the judge *may* order the defendant to submit to examination.

■ After the order to the defendant to submit to examination, we note that the article mandates certain procedures. The court *shall* advise the experts of the facts and circumstances of the offense and the elements of the insanity defense; the experts *shall* submit a written report to the court within 30 days; the court *shall* furnish copies of the report to the attorneys.

In *Parker v. State*, 594 S.W.2d 419 (Tex. Crim.App.1980) the defendant was exam-

ined by Dr. John Holbrook at the State's request and without court order. The defendant filed a pretrial motion seeking a copy of Holbrook's report. At the hearing on the motion, it was determined the report had not been prepared; the court ordered that defendant's attorney be given a copy as soon as the report was received by the State. Apparently both the State and defendant's attorney received the report on the morning the trial commenced. Defendant reurged his motion to suppress Holbrook's testimony, but took no further action in such regard and announced ready for trial. Holbrook testified on the third day of trial. Defendant's expert, Dr. Coons, had Holbrook's report available during that time, and in fact Coons testified in surrebuttal after Holbrook. The court held there was no reversible error since defendant in no way showed at trial that he was not prepared to meet the expected adverse testimony.

In *Jarrett v. State*, 647 S.W.2d 409 (Tex. App.—Fort Worth 1983, no pet.) the State anticipated the defendant would call a psychiatrist at the penalty stage of the trial. The State sought, and was granted, the appointment of an expert. Jarrett's brief asserted he did not receive a copy of the report of the State's expert. The record failed to disclose the fact that the report was not furnished, and the appellate court held no error had been preserved for review. In a footnote, by way of dictum, the court held failure to receive the report was harmless error because defendant's attorney had seen the report before trial, had not brought the noncompliance to the attention of the trial court, and had not sought additional time to prepare his defense due to recent discovery of the report.

■ We hold these cases are distinguishable from the instant case. Here the report from one expert was received some eight days prior to trial; a copy was not furnished to appellant until that particular expert is about to testify. No report was ever received from the other expert. Appellant's own expert had testified and been released from the trial before the State called its experts. Appellant vigorously and properly objected to the testimony of such experts. In an effort to achieve fairness, the trial court offered some time (apparently an hour or so) to appellant's attorney to prepare for such testimony. However, we hold the efforts of the trial judge fell far short of what would have constituted even minimum provisions under the circumstances. Appellant should have had sufficient time to review the report in depth with his expert—he should have had sufficient time to secure the testimony of his expert and possibly others in rebuttal of the experts called by the State. He was entitled to a report from Dr. Nottingham. It is noted that both of the experts testified in their opinion the appellant was sane.

■ In any case, action by the court itself in appointing disinterested experts in a search for the truth attaches to such action an aura of dispassionate impartiality. The testimony of such experts is likely to be more impressive to a jury. The provisions mandated by the legislature with regard to such court action should be complied with in order to assure fairness to the defendant. Failure of such compliance in the instant case deprived appellant of due process of law. Appellant's fourth ground of error is sustained.

Appellant's fifth ground of error complains that the State's expert was permitted to testify about statements made to him by appellant during the examination; that appellant had not only not waived his Miranda right of silence, he had expressly reserved them.

■ When appellant pled and attempted to prove his insanity by the testimony of an expert witness who had observed, interviewed, and tested appellant, all with his cooperation, appellant waived his Fifth Amendment privilege against self-incrimination. *Heflin v. State*, 640 S.W.2d 58 (Tex.App.—Austin 1982, pet. ref'd). Appellant's fifth ground of error is overruled.

Appellant's sixth ground of error contends error in denying F. Lee Bailey of Massachusetts permission to represent ap-

pellant as lead counsel. The seventh ground of error contends appellant's first motion for continuance should have been granted so F. Lee Bailey could be present for trial.

Pretrial hearings were held relative to F. Lee Bailey and Kenneth Fishman serving as appellant's counsel. Neither Bailey nor Fishman were licensed to practice law in Texas. We note that neither Bailey nor Fishman ever made an appearance in a reported court procedure. The trial court gave the instant case a special setting, apparently with the consent of all counsel, including Bailey and Fishman. At a pretrial hearing it was reported that Bailey's busy schedule would not permit him to be present at the scheduled special setting. The court refused to permit Bailey and Fishman to represent appellant, and denied appellant's first motion for ontinuance.

The record reveals that there was no abuse of discretion in either action by the court. An accused's right to counsel of his own choice should be honored; however, such right must not be manipulated so as to obstruct the orderly procedure of courts or to interfere with the efficient administration of justice. *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex.Crim.App. 1982). The commitments of an accused's attorney should be considered by a trial court; however, the management of the court's docket cannot be arbitrarily controlled by such commitments. The record further fails to reveal that the appellant suffered any harm as a result of either action. Appellant's sixth and seventh grounds of error are overruled.

Judgment reversed and cause remanded for new trial.