**Christobal Lee CARTER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–124–CR.**

Court of Appeals of Texas,
Fort Worth.

April 6, 1993.

Lon Darley, Janis Darley, Darley & Darley, Denton, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Kathleen A. Walsh, Asst. Dist. Atty., Denton, for State.

Before HILL, C.J., and WEAVER and JOE SPURLOCK, II, JJ.

## OPINION

WEAVER, Justice.

Christobal Lee Carter was convicted by a jury of the offense of aggravated sexual assault. *See* TEX.PENAL CODE ANN. § 22.-021 (Vernon 1989). The jury assessed punishment at ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice. Carter's thirty points of error complain of the admission of the testimony and reports of Dr. James Grigson, the court-appointed expert witness in response to Carter's insanity defense, and of the relevancy of the victim's testimony concerning an AIDS test.

We affirm.

■ In points of error four and five, Carter challenges the relevancy of the victim's testimony that she was tested for AIDS as part of the post-assault rape examination. Carter contends that this evidence is irrelevant to prove either sexual penetration or mental illness. The State asserts that it is relevant as evidence of the physical injuries sustained by the victim of a violent crime.

Texas Rule of Criminal Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Brown v. State,* 757 S.W.2d 739, 740 (Tex.Crim.App.1988), *quoting Plante v. State,* 692 S.W.2d 487, 491 n. 6 (Tex.Crim.App.1985). The Texas Court of Criminal Appeals has elaborated on that definition by describing relevant evidence as evidence "which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable." *Brown,* 757 S.W.2d at 740; *Plante,* 692 S.W.2d at 491. Under either definition, relevancy is predicated on a subjective rela-

tionship between the proffered evidence and a fact that is of consequence to the determination of the action. *Brown,* 757 S.W.2d at 740.

A trial court's decision to admit evidence over a timely lack of relevancy objection is reviewed by an appellate court under an abuse of discretion standard. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (opinion on reh'g). When the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can determine that the trial court abused its discretion. *Id.*

The complainant testified during direct-examination, and over appellant's objection, that she had an AIDS test as a result of the sexual assault. Doctors who examined the victim after the assault testified that tests for sexually transmitted diseases, including HIV, are routinely performed during rape examinations and that those tests were performed on the complainant. Carter's attorney did not object to the doctors' testimony. No other evidence was offered pertaining to AIDS testing of either the complainant or Carter.

Carter contends that no penetration occurred; therefore, according to Carter there is no subjective relationship between evidence of an AIDS test and proving penetration. Carter also asserts that there was no subjective relationship between evidence of the AIDS test and Carter's mental illness. While both propositions may be true, we find that the complained of evidence was relevant to other issues in the case, namely, as evidence of the physical injuries sustained by the victim of a violent crime. *See Hafti v. State,* 487 S.W.2d 745, 748 (Tex.Crim.App.1972); *Robinson v. State,* 457 S.W.2d 572, 574 (Tex.Crim.App. 1970); *Levell v. State,* 453 S.W.2d 831, 832 (Tex.Crim.App.1970); *Maxwell v. State,* 362

S.W.2d 326, 328 (Tex.Crim.App.1962); *Mack v. State,* 307 S.W.2d 588, 589 (Tex. Crim.App.1957). Moreover, any error in the complainant's testimony about the AIDS test was rendered harmless by Carter's failure to object when the doctors testified to the same evidence. *Brown,* 757 S.W.2d at 741. Under these circumstances, we find that the trial court did not abuse its discretion by admitting this evidence. Points of error four and five are overruled.

In points of error one, two, and three, appellant challenges the relevancy of Dr. Grigson's testimony and written report[1] as they pertain to the issue of appellant's future dangerousness. Dr. Grigson testified that appellant was dangerous at the time of the assault. In his written report, Dr. Grigson stated, in the present tense, that appellant "is a severe sociopath and is extremely dangerous." Appellant's attorney did not raise a relevancy objection to that portion of the written report even though he did make extensive objections to the report in its entirety pursuant to his written trial objections and orally during the trial. Nowhere in the record does Dr. Grigson directly comment on appellant's future dangerousness.

The prosecutor mentioned future dangerousness in his closing argument by building upon one of Dr. Grigson's answers, however. During the guilt/innocence stage of the trial, Dr. Grigson gave a non-responsive answer of "I wondered about the notches in his hammer there, how many more notches are actually on that hammer." In closing argument at the punishment phase of the trial, the prosecutor argued "Protect the community from this monster, which the evidence shows he clearly is. How many more notches will there be if you don't do that? How many more times?" Dr. Grigson's statement, standing alone, does not go to future dangerousness even though the prosecutor's statement does.

---

**1.** Dr. Grigson actually prepared two reports— one which dealt with appellant's sanity at the time of the commission of the offense, and the other which dealt with appellant's competency to stand trial. Since appellant's competency to stand trial was not an issue in the trial court below, we need not consider Dr. Grigson's competency report on this appeal.

The test for the admission of expert testimony is "whether the expert's testimony, if believed, will assist the untrained layman trier of fact to understand the evidence or determine a fact in issue, ... and whether it is otherwise admissible under general rules of relevant admissibility." *Duckett v. State,* 797 S.W.2d 906, 914 (Tex.Crim. App.1990). Appellant argues that evidence of his future dangerousness is irrelevant to a guilt/innocence determination or a determination of whether appellant was insane at the time of the offense. We need not address that question. From the record before us, it appears that appellant has mischaracterized Dr. Grigson's testimony and written reports as commenting on appellant's future dangerousness. We find only comments on appellant's dangerousness at the time of the commission of the offense and at the time of Dr. Grigson's mental status evaluation of appellant.

Even if Dr. Grigson's statements could be characterized as comments on appellant's future dangerousness, however, those statements would be admissible as impeachment and rebuttal evidence. Both appellant and appellant's mother testified to appellant's non-violent nature. Appellant also presented several psychologists and psychiatrists to testify on the issue of appellant' insanity plea. In response, Dr. Grigson testified as the State's first rebuttal witness.

■ Moreover, Dr. Grigson's testimony concerning appellant's dangerousness was cumulative of other evidence admitted into evidence at the trial. Experts other than Dr. Grigson testified that appellant had "rage control problems," that his behavior was "antisocial," that he had "intermittent explosive disorder" and/or "aggressive personality disorder" and/or an "aggressive pattern of behavior." The officers who arrested appellant testified to his violent outbursts of "I hit the bitch in the head with a hammer, and I'll kill her ass...." Evidence of the victim being beaten with a hammer and fists, and having her head slammed into concrete, was also admitted. Based upon the facts of this case, we do not find that the trial court abused its discretion in admitting Dr. Grigson's statements regarding appellant's dangerousness. Points of error one, two, and three are overruled.

■ Appellant's remaining points of error complain of the admission into evidence of Dr. Grigson's opinion testimony and written report. Most of these points of error mirror each other, and are presented in pairs or clusters, with one point going to Dr. Grigson's opinion testimony and the other going to his written report. In summary, all of these points of error grow out of appellant's dissatisfaction with Dr. Grigson's written report. Basically, appellant asserts that because Dr. Grigson's report did not comply with statutory requirements, admission of the report violated numerous rights as specifically stated in appellant's points of error. Moreover, appellant alleges that since the report was inadmissible, Dr. Grigson should not have been allowed to testify to his opinions regarding appellant's sanity.

Appellant's complaints are detailed in points of error six through thirty. Point of error six asserts that the trial court erred in admitting Dr. Grigson's opinion testimony over appellant's objection that Dr. Grigson had failed to comply with the statutory requirements for written expert reports pursuant to "insanity defense" examinations as set forth in article 46.03, section 3(d) and article 38.23 of the Texas Code of Criminal Procedure. Point of error seven makes a similar allegation, asserting that Dr. Grigson's report did not comply with the trial court's order which incorporated language from the statute as well as included additional requirements. Points of error eight, nine, twenty-one and twenty-two challenge the relevancy of Dr. Grigson's opinion testimony and written report. Points of error ten and twenty-three challenge the admission of Dr. Grigson's opinion testimony and report over appellant's objections based upon the Due Process provisions of the Fifth and Fourteenth Amendments to the United States Constitution. Points of error eleven and twenty-four challenge the admission of Dr. Grigson's opinion testimony over appellant's objec-

tions raising the due course of law provision of article I, section 19 of the Texas Constitution and article 1.04 of the Texas Code of Criminal Procedure. Points of error twelve, thirteen, twenty-five, and twenty-six challenge the admission of Dr. Grigson's opinion testimony and report based upon the effective assistance of counsel provisions of the Sixth Amendment to the United States Constitution, article I, section 10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. Points of error fourteen, fifteen, twenty-seven, and twenty-eight challenge the admission of Dr. Grigson's opinion testimony and report based upon the Confrontation Clauses of the Sixth Amendment to the United States Constitution, article I, section 10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. Points of error sixteen, seventeen, twenty-nine, and thirty challenge the admission of Dr. Grigson's opinion testimony and report over appellant's objections based upon the compulsory process provisions of the Sixth Amendment to the United States Constitution, article I, section 10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. Point of error eighteen complains of the trial court's denial of appellant's motion for continuance to take the oral deposition of Dr. Grigson.

When a defendant files a notice of intent to offer insanity evidence, the trial judge has discretion to appoint disinterested experts to examine the defendant with regard to the insanity defense. TEX.CODE CRIM.PROC.ANN. art. 46.03, § 3(a) (Vernon 1979). The trial court in this case appointed four mental health experts, one of whom was Dr. Grigson, to examine appellant. The statute further states:

A written report of the examination shall be submitted to the court within 30 days of the order of examination, and the court shall furnish copies of the report to the defense counsel and the prosecuting attorney. The report shall include a description of the procedures used in the examination and the examiner's observations and findings pertaining to the in-

sanity defense. The examiner shall also submit a separate report setting forth his observations and findings concerning:

(1) whether the defendant is presently mentally ill and requires court-ordered mental health services; or

(2) whether the defendant is a mentally retarded person as defined in the Mentally Retarded Persons Act of 1977 (Article 5547–300, Vernon's Texas Civil Statutes).

TEX.CODE CRIM.PROC.ANN. art. 46.03, § 3(d) (Vernon Supp.1993). The order appointing Dr. Grigson contained this language. The order also directed Dr. Grigson to state his opinion "as to whether or not data from the Halstead–Reitan Test and Wisconsin Card Sort Test are necessary for an expert in the field of psychiatry to form an opinion on the issue of Defendants [sic] sanity."

Dr. Grigson submitted a one-page report. The body of that report contained headings of "General Appearance and Behavior," "Production of Speech," "Affect and Mood," "Content of Thought," and "Sensorium." Each heading was followed by a one or two-line finding. The report concluded with Dr. Grigson's opinion that "at the time of the offense [appellant] was not suffering from a severe mental disease and knew the difference between right and wrong. He is a severe sociopath and is extremely dangerous. I see no need for any psychological or neurological testing." Appellant contends that this report included neither a description of the procedures used in the examination of the appellant, nor a description of the examiner's observations and findings pertaining to the insanity defense. Appellant also claims that this report failed to comply with the specific directive of the trial court's order.

We are aware of no case law addressing the issue of the amount of detail which must be included in expert reports such as that submitted by Dr. Grigson in order to comply with the statutory mandate, and we have been cited to none. The three cases cited by appellant go to the timing of the defendant's receipt of the expert's report. Appellant does not complain on appeal, however, that Dr. Grigson's report was not

provided to his counsel in a timely manner; instead, appellant argues that the content of Dr. Grigson's report is "tantamount to no report at all." Thus, appellant claims he was unable to review Dr. Grigson's report with the other expert witnesses or to prepare to rebut Dr. Grigson's opinion testimony through the use of other witnesses.

Dr. Grigson's report does not contain neat and tidy labels corresponding to the matters mentioned in either the statute or the court's order; therefore, a comparison between Dr. Grigson's report and the statutory language and the court order is necessary. The report clearly contains Dr. Grigson's observations and findings as to the insanity defense, present mental illness, and mental retardation. Dr. Grigson's statement of "[i]n conclusion, it is my opinion that [appellant] at the time of the offense was not suffering from a severe mental disease and knew the difference between right and wrong" contains his finding as to the appellant's sanity and addresses the issue of mental disease. Dr. Grigson's "sensorium" category finding that appellant "is slightly above average intelligence" addresses the issue of mental retardation. Dr. Grigson's conclusory statement "I see no need for any psychological or neurological testing" addresses the court-ordered requirement to determine whether data from the Halstead–Reitan Test and Wisconsin Card Sort Test was necessary.

Dr. Grigson's report is not so clear in describing the procedures used in the examination, however. Dr. Grigson testified that his one-page report was "a complete description of the entire procedure that I performed on [appellant] in—that being the psychiatric examination." In the "production of speech" category, Dr. Grigson finds that appellant "was able to reach goal ideas." In the "affect and mood" category, Dr. Grigson finds that appellant "was faking memory loss," and that "[n]o delusions nor hallucinations were elicited." In the "sensorium" category, Dr. Grigson finds that appellant "was oriented to time, place and person." These findings suggest that Dr. Grigson conducted an interview with appellant. This conclusion is reinforced by the evidence elicited from Dr. Grigson during a voir dire examination. Dr. Grigson testified that he did not use any objective tests in his evaluation of appellant. Instead, Dr. Grigson conducted a "mental status [or psychiatric] examination" which consisted of "a long list of questions" and the appellant's answers composed the facts and data upon which Dr. Grigson's conclusions were based.

Construing the same statute in a case in which no expert report was filed, this court has previously noted that the provisions mandated by the legislature should be complied with in order to assure fairness to the defendant. *Wynne v. State*, 676 S.W.2d 650, 657 (Tex.App.—Fort Worth 1984, pet. ref'd). Dr. Grigson technically complied with the statute, albeit it with a one-page, generalized report. While we do not condone the use by court-appointed experts of such brief and conclusory written reports, especially in light of the importance which our State places upon the insanity defense, in the present case we find that Dr. Grigson's report contained the bare minimum of information necessary to comply with the statutory requirements and the court's order.

■ Moreover, even if Dr. Grigson's report did not comply with the statutory and court-imposed requirements, its admission was harmless in light of the many opportunities afforded to appellant during trial to elicit the allegedly omitted information. Appellant's attorney received a copy of Dr. Grigson's report several weeks before trial. Dr. Grigson testified that he was available to discuss the report with any of the attorneys involved in the case, but appellant's attorney never contacted him. Before admission of either Dr. Grigson's opinion testimony or his written report, appellant's attorney conducted an extensive voir dire of Dr. Grigson which included questions concerning the facts and data used by Dr. Grigson in his preparation of the report. Appellant's attorney also conducted an extensive cross-examination of Dr. Grigson which included questions designed to elicit information to discredit the methods used and opinion formed by Dr. Grigson. One

of appellant's expert witnesses testified that he had received a copy of Dr. Grigson's report and had reviewed it prior to testifying, but did not indicate that he was unable to understand Dr. Grigson's report.

 Lastly, we find that the trial court did not err by denying appellant's motion for continuance so that Dr. Grigson's oral deposition could be taken. A criminal defendant may take depositions if he shows good reason at a hearing and the court determines that good cause exists. *McKinney v. State*, 491 S.W.2d 404, 406 (Tex.Crim.App.1973). The trial court has wide discretion in either granting or denying motions for taking depositions. *Beard v. State*, 481 S.W.2d 875, 876 (Tex.Crim. App.1972); *Aguilar v. State*, 468 S.W.2d 75, 79 (Tex.Crim.App.1971). We find no abuse of discretion here. The appellant's request was untimely since it was made fifteen days after the trial began. *Aguilar*, 468 S.W.2d at 78; *Langston v. State*, 416 S.W.2d 821, 822 (Tex.Crim.App.1967). Furthermore, appellant was afforded the opportunity to conduct extensive voir dire and cross-examination of Dr. Grigson. *McKinney*, 491 S.W.2d at 406–07. Appellant's points of error six through thirty are overruled.

The judgment of the trial court is affirmed.

JOE SPURLOCK, II, J., not participating.