Damon Darnell GIRON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–99–192CR.

Court of Appeals of Texas,
Beaumont.

Submitted May 12, 2000.

Decided June 21, 2000.

Bruce W. Cobb, Beaumont, for appellant.

Tom Maness, Dist. Atty., Rodney D. Conerly, Asst. Criminal Dist. Atty., Beaumont, for State.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

This is an appeal from a conviction for the offense of Murder. Although eligible for probation, the jury assessed punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for life. Four appellate issues are brought to us for consideration, *viz:*

I. The trial court erred in allowing two expert witnesses on the issue of insanity to testify over defense objection that their proposed testimony was "outside the four corners" of the experts' written reports in violation of the Due Process Clause of the Fourteenth Amendment and Confrontation Clause of the Sixth Amendment.

II. The trial court's action in allowing the two experts to testify over the defense objection violated the due process and confrontation clauses of the Texas Constitution.

III. The trial court erred in failing to appoint an expert who would provide Giron with effective assistance in violation of the Due Process clause of the Fourteenth Amendment.

IV. The trial court erred in admitting Damon's confession into evidence and holding that it was freely and voluntarily given.

The pertinent facts of the instant case are not contested. The record reflects that on September 30, 1997, appellant, a "friend" of the victim, Donald Graham, entered Graham's house on Fort Worth Street in Port Arthur, Texas, pulled a handgun, and fired five shots into the kitchen-area where Graham and a number of other individuals were congregating. Graham sustained three gunshot wounds. Two of the wounds, one to the chest and one to the back, essentially led to Graham's death as the bullets destroyed several of Graham's vital organs. Another man, Frank Arceneaux, was also struck by a bullet while standing in the kitchen-area. Arceneaux, however, survived the shooting and testified at trial.

From information apparently supplied by an eyewitness, appellant was developed as a suspect in the shooting. Several hours later, appellant surrendered himself to authorities with the help of his uncle, Terry Hamilton. Appellant subsequently provided a statement to police that was reduced to writing. Said statement was introduced into evidence over the objection of defense counsel, following a *Jackson v. Denno* [1] hearing. Although somewhat confusing and disjointed, appellant's statement does inculpate him in Graham's murder.

More to the point of this appeal, the procedural history reflects that shortly after being appointed to represent appellant, defense counsel filed "Motion to Appoint Psychiatrist or Psychologist to Examine the Defendant to Determine Competency and Sanity." The trial court granted said motion apparently without need for an evidentiary hearing and Dr. George Groves, M.D. was appointed. After examining appellant, Dr. Groves set out the following in his written report as to appellant's sanity:

SANITY: At the present time, it is difficult to assess Mr. Giron's mental state at the time of the incident, as he basically refuses to discuss this in any detail, other than as described above. Further information regarding his degree of intoxication would be beneficial, though

1. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

not available at the present time. He, in fact, denied any major mental or emotional problem at the time of the alleged incident, other than stating he felt that he was "fearful for my life."

At the present time, I do not believe that he fits the criteria for a major mental disorder.

SUMMARY: I believe that Mr. Giron is indeed competent to stand trial and would be able to participate in own (sic) defense. I do not believe that he is suffering from a psychotic disorder at the present time, in spite of the fact of some presence of some unusual symptoms and responses to questions during the interview. There is a question also based on his responses, as to whether there is a degree of malingering or misrepresentation of the facts. This is difficult to assess obviously.

Dr. Groves' report is dated February 3, 1998. On May 28, 1998, defense counsel filed, along with numerous other pretrial motions, a notice of intent to raise the insanity defense as per TEX.CODE CRIM. PROC. ANN. art. 46.03 (Vernon 1979 & Pamph.2000).

On September 28, 1998, defense counsel filed an instrument entitled, "Motion to Appoint Psychologist to Assist in the Evaluation, Preparation and Presentation of Defense." The pertinent portions of said motion are reproduced as follows:

Counsel has spoken with Doctor Groves, Ph.D. (sic) and is aware of doctor's appraisal. However, counsel feels that an additional evaluation by a mental health expert is necessary as medical condition of the Defendant seems to vary from time to time, and to insure with an abundance of caution, that a person who is incompetent or insane at the time of the offense is not wrongfully put in prison; accordingly, undersigned request that the court appoint an additional mental health expert to also evaluate the Defendant so that Dr. Groves' opinion can either be verified or contested as the case may be.

WHEREFORE, PREMISES CONSIDERED, defendant requests that this Court consider this motion and order and that he be provided with sufficient funds to have a competent psychologist assist him in the investigation, evaluation, preparation and presentation of his defense.

The trial court granted this motion also apparently without need for an evidentiary hearing. Dr. Edward Gripon, M.D. was subsequently appointed. Following his interview with appellant, Dr. Gripon issued a written evaluation on January 4, 1999. Dr. Gripon's written evaluation provided an opinion as to appellant's competency to stand trial only, not as to sanity at the time of the offense. Indeed, Dr. Gripon testified that he did not send his separate report on appellant's sanity to the trial court.

Section 3 of art. 46.03 provides, *inter alia,* that if the trial court appoints a "disinterested expert" to examine a defendant with regard to an insanity defense:

A written report of the examination shall be submitted to the court within 30 days of the order of examination, and the court shall furnish copies of the report to the defense counsel and the prosecuting attorney. The report shall include a description of the procedures used in the examination and the examiner's observations and findings pertaining to the insanity defense.

*Id.* at Sec. 3(d). The record before us clearly indicates that Dr. Gripon furnished the trial court with no written report on appellant's sanity, although mandated to do so by art. 46.03, Sec. 3(d).

The State's brief fails to note the complete absence of Dr. Gripon's written report on appellant's *sanity,* as opposed to his written report on appellant's *competency.* Indeed, the State contends appellant has waived error on this point because the trial objection to the testimony of the doctors as being beyond the "four corners" of their reports preserved nothing for review.

We disagree with the State's position as it appears to take the appellant's objection out of context. The full objection is reproduced as follows:

[Defense Counsel]: Yes, Your Honor, it's been brought to the defense's [sic] that The State is calling both Dr. Gripon and Dr. Groves apparently to testify as to the defendant's sanity at the time of offense. In the reports that were furnished to the Court and to both parties, neither doctor addresses that. Dr. Gripon doesn't address sanity at time of offense at all. Dr. Groves says it's difficult, but he made no ruling as to insanity at the time of offense. We're not questioning competency to stand trial. We're raising the issue of sanity at the time of offense, and neither one of these physicians have addressed that issue. I say that— I object to them testifying and expanding on the four corners of their report. I feel like, since these were court-appointed doctors for the Court, that they are locked into the four corners of their report and anything outside of that is improper and I object to their testimony concerning sanity.

The State's brief characterizes Drs. Groves and Gripon as "appointed to assist Appellant in his defense and his notice of intention to raise the insanity defense." The record before us clearly indicates that neither Dr. Gripon nor Dr. Groves could be considered as an expert "assisting" the appellant with his insanity defense as such an expert is contemplated in *DeFreece v. State*, 848 S.W.2d 150 (Tex.Crim.App. 1993). The *DeFreece* Court set out the crucial distinction that must be made regarding such experts as follows:

In *Granviel v. State*, [552 S.W.2d 107] at 115 [ (Tex.Crim.App.1976) ], we called the "disinterested experts" contemplated by former Article 46.02, § 2(f)(1), now Articles 46.02, § 3(a) & 46.03, § 3(a), "the court's ... experts." See also *Von Byrd v. State*, [569 S.W.2d 883] at 896 [ (Tex.Crim.App.1978) ]. We reject the notion that a "court's expert" necessarily fulfills the role of psychiatric assistant to the indigent accused envisioned by *Ake[ v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) ]. Such a "court's expert" may well serve an important function in identifying whether sanity will be a significant factor at trial. But in an adversarial trial itself, judge and jury necessarily play a passive, neutral role. In that context the phrase "court's expert" is an oxymoron. It is the parties, not the judge, who supply evidence from which the jury is to distill the truth. And while it is true, as the Fifth Circuit echoes in *Granviel v. Lynaugh*, [881 F.2d 185] at 191 [ (5th Cir. 1989) ], that "[a] psychiatrist's examination is not an adversary proceeding[,]" the trial at which the State adduces evidence of that examination most certainly is.

In an adversarial system due process requires at least a reasonably level playing field at trial. In the present context that means more than just an examination by a "neutral" psychiatrist. It also means the appointment of a psychiatrist to provide technical assistance to the accused, to help evaluate the strength of his defense, to offer his own expert diagnosis at trial if it is favorable to the defense, and to identify the weaknesses in the State's case, if any, by testifying himself and/or preparing counsel to cross-examine opposing experts.... Thus, more than the appointment of "disinterested experts" under Article 46.03, supra, is required.

*Id.* at 159.

 While we feel that appellant waived any appellate complaint that the trial court erred in failing to provide him with an *Ake/DeFreece* defense psychiatric expert by failing to object at trial [appellate issue three], appellant's complaint that the appointed "disinterested experts" trial testimony on appellant's sanity should not be permitted because of a failure to follow the mandates of art. 46.03 was timely [appellate issues one and two]. In *Wynne v.*

*State,* 676 S.W.2d 650, 656 (Tex.App.— Fort Worth 1984, pet. ref'd), the procedural circumstances were similar to those in the instant case. In *Wynne,* the defendant filed a notice of insanity defense. Thereafter, the State requested the appointment of *mental health experts* to examine the defendant. Two experts, a psychologist and a psychiatrist, were appointed. The defendant was then jointly examined by the two doctors. The psychologist prepared a written report of the examination which was received by the trial court *34 days* after the experts were appointed. This submission to the trial court was untimely per art. 46.03, Sec. 3(d). No report was received by the court from the psychiatrist.

On the eighth day of trial, the State offered the testimony of both doctors as rebuttal witnesses following the defendant's case-in-chief. The defendant had not been furnished a copy of the psychologist's written report prior to being called as a witness. The defendant timely objected to the doctors being allowed to testify. The trial court recognized that the written report was not timely filed but offered defense counsel the opportunity to take the psychologist on voir dire out of the jury's presence for an hour "just so that you won't have to go into this less informed than I wish you were." *Id.*

In reversing Wynne's conviction on this issue, the Fort Worth court initially noted that while certain provisions of art. 46.03, Sec. 3 are discretionary with the trial court, other provisions are mandatory:

> After the order to the defendant to submit to examination, we note that the article mandates certain procedures. The court *shall* advise the experts of the facts and circumstances of the offense and the elements of the insanity defense; the experts *shall* submit a written report to the court within 30 days; the court *shall* furnish copies of the report to the attorneys.

*Id.* The Fort Worth Court then summed up the various ways in which the provisions of art. 46.03, Sec. 3 had not been met, several similar to what occurred in the instant case:

> Here the report from one expert was received some eight days prior to trial; a copy was not furnished to appellant until that particular expert [was] about to testify. No report was ever received from the other expert. Appellant's own expert had testified and been released from the trial before the State called its experts. Appellant vigorously and properly objected to the testimony of such experts. In an effort to achieve fairness, the trial court offered some time (apparently an hour or so) to appellant's attorney to prepare for such testimony. However, we hold the efforts of the trial judge fell far short of what would have constituted even minimum provisions under the circumstances. Appellant should have had sufficient time to review the report in depth with his expert— he should have had sufficient time to secure the testimony of his expert and possibly others in rebuttal of the experts called by the State. He was entitled to a report from [the psychiatrist]. It is noted that both experts testified in their opinion the appellant was sane.

*Id.* at 657.

In the instant case, on the day of trial defense counsel had been provided, from Dr. Groves, a "sanity" evaluation which, at best, danced around the issue of appellant's mental condition *at the time of the commission of the offense.* Furthermore, from comments contained in Dr. Groves' report, he apparently was not advised by the trial court "of the facts and circumstances of the offense with which the defendant [was] charged" so as to make his sanity assessment a bit more definitive. *See* art. 46.03, Sec. 3(c). From Dr. Gripon, neither the court nor the parties received any report with regard to sanity, nor did his submitted written report on *competency* even hint at the sanity issue. Nevertheless, Dr. Gripon was permitted to testi-

fy, over timely objection, to the following during the State's case in rebuttal:

> Q. [State] Do you believe at the time of the offense he knew right from wrong?
>
> A. [Dr. Gripon] He has no mental condition that, in my opinion, would cause him to be unable to understand right versus wrong.
>
> . . . .
>
> Q. So, in your opinion, he knew when he shot Mr. Donald Ray Graham that that was wrong.
>
> A. He would have known that was wrong if he shot someone, yes. He has the requisite mental ability to understand the wrongfulness of shooting someone, yes.

Obviously, Dr. Gripon testified, in no uncertain terms, to the ultimate issue in the case, i.e., appellant's sanity at the time the offense was committed. Prior to the testimony of Drs. Groves and Gripon, the only evidence touching on appellant's mental condition at the time of the offense came from State's Exhibit 20, the written statement taken from appellant, the testimony of appellant's mother, Gwendolyn Giron, during appellant's case-in-chief, and from the testimony of appellant. Appellant offered no expert testimony with regard to his sanity defense.

 We agree with the State that it was the appellant's burden to prove he did not know his conduct was wrong at the time of the shooting by a preponderance of the evidence. *See* TEX. PENAL CODE ANN. § 8.01 (Vernon 1994); *Bigby v. State,* 892 S.W.2d 864, 870 (Tex.Crim.App.1994). Having the experts' reports before him prior to trial, one report containing a somewhat equivocal assessment on appellant's sanity at the time of the offense, and the other report containing no sanity assessment at all, defense counsel may have felt the most effective way to prove lack of sanity when the killing took place was by direct testimony of appellant himself, as well as testimony from appellant's mother. While Dr. Groves' testimony basically mir-

rored his written report with regard to the sanity issue, Dr. Gripon's testimony, as noted above, embraced the ultimate issue without the doctor having first made his written sanity report available to the trial court and the parties in violation of art. 46.03, Sec. 3(d). The Court in *Wynne* noted the serious collateral consequences of such a violation:

> In any case, action by the court itself in appointing disinterested experts in a search for the truth attaches to such action an aura of dispassionate impartiality. The testimony of such experts is likely to be more impressive to a jury. The provisions mandated by the legislature with regard to such court action should be complied with in order to assure fairness to the defendant. Failure of such compliance in the instant case deprived appellant of due process of law.

*Wynne,* 676 S.W.2d at 657. We find the trial court abused its discretion in permitting Dr. Gripon to testify to the issue of appellant's sanity at the time of the offense after having failed to comply with art. 46.03, Sec. 3(d) by not submitting his written sanity report to the trial court for use by appellant.

Having found trial error, we must now determine whether such error is reversible. TEX.R.APP. P. 44.2(b) provides that non-constitutional error which does not affect the appellant's substantial rights must be disregarded. In the instant case, we cannot say that appellant's substantial rights were not affected by Dr. Gripon's testimony. In questioning Dr. Gripon about his professional background, the State elicited the fact that Dr. Gripon was not only a "forensic psychiatrist" (a subspecialty of psychiatry concentrating on the interfacing between psychiatry as a mental health field and the legal system), but the only board certified forensic psychiatrist in the local geographical area. The jury was therefore made aware that Dr. Gripon was not merely a mental health expert, but also an expert on the impact mental health, or the lack thereof, has on

the legal system. To thereafter have Dr. Gripon testify definitively and unequivocally that appellant was completely sane at the time of the shooting when, prior to this testimony, defense counsel had no information that either appointed expert had made such a definitive and unequivocal assessment, obviously affected the substantial rights of appellant to due process' "reasonably level playing field at trial." *See De-Freece,* 848 S.W.2d at 159. Appellant's case for insanity was totally overwhelmed. The unevenness of the playing field for appellant is even more apparent in light of Dr. Groves' written sanity evaluation of which appellant was aware. Dr. Groves' evaluation, reproduced above, is very measured in its wording and actually provides no opinion as to appellant's sanity *at the time of the offense.* It is not enough to say, as does the State, that Dr. Groves testified that he had not changed his opinion as to whether or not he could deter-

mine whether appellant was insane at the time of the offense, so appellant was well able to rebut said opinion. That may well have been true with regard to Dr. Groves, but obviously not with regard to Dr. Gripon. We conclude, therefore, that the trial court's error did affect the substantial rights of appellant. Points of error one and two are sustained. The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion. Because of our treatment of issues one and two, we decline to address issue four.

REVERSED AND REMANDED.